## FRANK *v.* UNITED STATES.

No. 200.   Argued December 12, 1968.—Decided May 19, 1969.

*John B. Ogden* argued the cause and filed briefs for petitioner.

*Peter L. Strauss* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Vinson, Beatrice Rosenberg,* and *Edward Fenig.*

*Frank S. Hogan, pro se,* and *Michael R. Juviler* filed a brief for the District Attorney of New York County as *amicus curiae* urging affirmance.

Mr. Justice Marshall delivered the opinion of the Court.

Petitioner was charged with criminal contempt of the United States District Court for the Western District of Oklahoma. The charge resulted from his violation of an injunction issued by that court at the request of the Securities and Exchange Commission. The injunction restrained petitioner from using interstate facilities in the sale of certain oil interests without having filed a registration statement with the Commission. Petitioner's demand for a jury trial was denied. He was convicted, and the court suspended imposition of sentence and placed him on probation for three years. The Court of Appeals affirmed. *Frank v. United States,* 384 F. 2d 276 (C. A. 10th Cir. 1967). We granted certiorari, 392 U. S. 925 (1968), to determine whether petitioner was entitled to a jury trial. We conclude that he was not.

The Sixth Amendment to the Constitution gives defendants a right to a trial by jury in "all criminal prosecutions." However, it has long been the rule that so-called "petty" offenses may be tried without a jury. See, *e. g., District of Columbia v. Clawans,* 300 U. S. 617 (1937). For purposes of the right to trial by jury, criminal contempt is treated just like all other criminal offenses. The defendant is entitled to a jury trial unless the particular offense can be classified as "petty." *Dyke v. Taylor Implement Mfg. Co.,* 391 U. S. 216 (1968); *Bloom v. Illinois,* 391 U. S. 194 (1968); *Cheff v. Schnackenberg,* 384 U. S. 373 (1966).

In determining whether a particular offense can be classified as "petty," this Court has sought objective indications of the seriousness with which society regards the offense. *District of Columbia v. Clawans, supra,* at 628. The most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission. Thus, in *Clawans* this Court held that

a jury trial was not required in a prosecution for engaging in a certain business without a license, an offense carrying a maximum sentence of 90 days. Recently, we held that a jury trial was required in a state prosecution for simple battery, an offense carrying a possible prison sentence of two years. *Duncan* v. *Louisiana,* 391 U. S. 145 (1968).

In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion. In such cases, the legislature has included within the definition of the crime itself a judgment about the seriousness of the offense. See *Duncan* v. *Louisiana, supra,* at 162, n. 35. But a person may be found in contempt of court for a great many different types of offenses, ranging from disrespect for the court to acts otherwise criminal. Congress, perhaps in recognition of the scope of criminal contempt, has authorized courts to impose penalties but has not placed any specific limits on their discretion; it has not categorized contempts as "serious" or "petty." 18 U. S. C. §§ 401, 402.[1] Accordingly, this Court has held that in prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense.[2] See, *e. g., Cheff* v.

---

[1] Congress has provided for a jury trial in certain cases of criminal contempt. See, *e. g.,* 18 U. S. C. §§ 402, 3691, 3692. Section 3691 provides for a jury trial in contempts involving willful disobedience of court orders where the "act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state . . . ." The present case falls within an exception to that rule for cases involving disobedience of any court order "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States."

[2] If the statute creating the offense specifies a maximum penalty, then of course that penalty is the relevant criterion. See *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216 (1968).

*Schnackenberg, supra.* Thus, this Court has held that sentences for criminal contempt of up to six months may constitutionally be imposed without a jury trial. *Ibid.*[3]

The Government concedes that a jury trial would have been necessary in the present case if petitioner had received a sentence in excess of six months. Indeed, the Government concedes that petitioner may be sentenced to no more than six months if he violates the terms of his probation.[4] However, the Government argues that petitioner's actual penalty is one which may be imposed upon those convicted of otherwise petty offenses, and, thus, that a jury trial was not required in the present case. We agree.

Numerous federal and state statutory schemes allow significant periods of probation to be imposed for otherwise petty offenses. For example, under federal law, most offenders may be placed on probation for up to five years in lieu of or, in certain cases, in addition to a term of imprisonment. See 18 U. S. C. § 3651. Congress, in making the probation statute applicable to "any offense not punishable by death or life imprisonment," clearly made it apply to petty, as well as more serious, offenses. In so doing, it did not indicate that the additional penalty of a term of probation was to place otherwise petty offenses in the "serious" category. In other words, Congress decided that petty offenses may be punished by any combination of penalties authorized by 18 U. S. C. § 1 and 18 U. S. C. § 3651. Therefore,

---

[3] The Court in *Cheff* relied on 18 U. S. C. § 1, which defines a petty offense as "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both . . . ."

[4] If imposition of sentence is suspended, the court may upon revocation of probation "impose any sentence which might originally have been imposed." 18 U. S. C. § 3653. Under *Cheff*, that sentence would be limited to six months' imprisonment.

the maximum penalty authorized in petty offense cases is not simply six months' imprisonment and a $500 fine. A petty offender may be placed on probation for up to five years and, if the terms of probation are violated, he may then be imprisoned for six months. 18 U. S. C. § 3653.

In *Cheff,* this Court undertook to categorize criminal contempts for purposes of the right to trial by jury. In the exercise of its supervisory power over the lower federal courts, the Court decided by analogy to 18 U. S. C. § 1 that penalties not exceeding those authorized for petty offenses could be imposed in criminal contempt cases without affording the right to a jury trial.[5] We think the analogy used in *Cheff* should apply equally here. Penalties presently authorized by Congress for petty offenses, including a term on probation, may be imposed in federal criminal contempt cases without a jury trial. Probation is, of course, a significant infringement of personal freedom, but it is certainly less onerous a restraint than jail itself.[6] In noncontempt cases, Congress has not viewed the possibility of five years' proba-

---

[5] "[W]e are constrained to view the [contempt] proceedings here as equivalent to a procedure to prosecute a petty offense, which under our decisions does not require a jury trial. . . . According to 18 U. S. C. § 1 (1964 ed.), '[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months' is a 'petty offense.' Since Cheff received a sentence of six months' imprisonment . . . , and since the nature of criminal contempt, an offense *sui generis,* does not, of itself, warrant treatment otherwise . . . , Cheff's offense can be treated only as 'petty' in the eyes of the statute and our prior decisions. We conclude therefore that Cheff was properly convicted without a jury." *Cheff* v. *Schnackenberg, supra,* at 379–380.

[6] Petitioner is required to make monthly reports to his probation officer, associate only with law-abiding persons, maintain reasonable hours, work regularly, report all job changes to his probation officer, and not leave the probation district without the permission of his probation officer.

tion as onerous enough to make an otherwise petty offense "serious." This Court is ill-equipped to make a contrary determination for contempt cases. As this Court said in *Clawans*, "[d]oubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." 300 U. S., at 628.

Petitioner's sentence is within the limits of the congressional definition of petty offenses. Accordingly, it was not error to deny him a jury trial.

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART, adhering to the views expressed in the dissenting opinion of MR. JUSTICE HARLAN in *Bloom* v. *Illinois,* 391 U. S. 194, 215, and in Part I of MR. JUSTICE HARLAN's separate opinion in *Cheff* v. *Schnackenberg,* 384 U. S. 373, 380, but considering themselves bound by the decisions of the Court in those cases, join in the above opinion on these premises.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The Court's decision today marks an unfortunate retreat from our recent decisions enforcing the Constitution's command that those accused of criminal offenses be afforded their fundamental right to a jury trial. See, *e. g., Bloom* v. *Illinois,* 391 U. S. 194 (1968); *Duncan* v. *Louisiana,* 391 U. S. 145 (1968); *Cheff* v. *Schnackenberg,* 384 U. S. 373 (1966). At the same time, the Court announces an alarming expansion of the nonjury contempt power, the excessive use of which we have so recently limited in *Bloom* v. *Illinois, supra,* and *Cheff* v. *Schnackenberg, supra.* The inescapable effect of this recession will be to put a new weapon for chilling

political expression in the unrestrained hands of trial judges. Now freed from the checks and restraints of the jury system, local judges can achieve, for a term of years, significant control over groups with unpopular views through the simple use of the injunctive and contempt power together with a punitive employment of the probation device, the conditions of which offer almost unlimited possibilities for abuse. Because I do not desire to contribute to such a result, and because I believe the Court's rationale rests on a misreading of the probation statute, I must note my dissent.

## I.

Today's decision stands as an open suggestion to the courts to utilize oppressive practices for avoiding, in unsettled times such as these, issues that must be squarely faced and for denying our minorities their full rights under the First Amendment. In order to inhibit, summarily, a group seeking to propagate even the least irritating views, a trial judge need only give a quick glance at the Court's opinion to recognize the numerous options now open to him. If, for instance, a large number of civil rights advocates, labor unionists, or student demonstrators are brought into court on minor trespass or disturbance charges, a jury will not be required even though the court proposes to control their lives for as long as five years. Without having to wait for a jury conviction, the trial judge would be free to impose, at will, such a lengthy probation sentence with onerous probation conditions—the effect of which could be oppressive. A trial judge need not wait until laws are violated and prosecutions are actually brought. He can simply issue a blanket injunction against an unpopular group, cite its members for contempt *en masse* for the slightest injunction violation, deny them a jury, and then, by imposing strict conditions, effectively deprive them of any meaningful freedom for an indefinite period

of up to five years. Despite our recent efforts to curb its use (see *Carroll* v. *Princess Anne,* 393 U. S. 175 (1968)) the injunction power has today become, when used with this newly liberated contempt power, *too awesome a weapon* to place in the hands of one man. The situation presented by *Walker* v. *Birmingham,* 388 U. S. 307 (1967), is but one example of the power now made freely available to trial judges.

The probation conditions imposed in this case (see n. 6, *ante*) illustrate the high degree of control that courts, together with their probation officers, can maintain over those brought before them. Thus, a court can require defendants to keep "reasonable hours" and, in addition, prohibit them from leaving the court's jurisdiction without the probation officer's permission. By instructing the probation officer to construe the reasonable hours restriction strictly and to refuse permission to leave the jurisdiction, a trial court can thereby virtually nullify a person's freedom of movement. Moreover, a court can insist that a defendant "work regularly," and thereby regulate his working life as well. Finally, a court can order a defendant to associate only with "law-abiding" persons, thereby significantly limiting his freedom of association, for this condition, which does not limit revocation of probation to "knowing association," forces him to choose his acquaintances at his peril.

Even these conditions, restrictive as they are, do not represent all the conditions available to a trial judge; he may impose others, and, of course, change or add to the conditions at any time during the five-year period.[1] The court's ability, further, to impose a six-month prison term for a probation violation at any time during that period, even after four years and 11 months, leaves no room for doubt as to the power of the probation officer

---

[1] If its onerous conditions multiplied, probation could be even more restrictive than the emerging prison work-release programs.

to enforce the restrictions most severely. And finally, the ease with which a probation officer can find a violation of so many broad conditions enhances the value of the probation device as a harassment tactic. Once having found a violation, of course, a trial court need not bother with a fair adversary hearing before committing the offenders to prison, for *Mempa* v. *Rhay*, 389 U. S. 128 (1967), does not require counsel at probation revocation hearings in misdemeanor cases.

If, in hamstringing protest groups, a trial judge is bound only by a five-year maximum probation period and the limits of his imagination in conceiving restrictive conditions, I would at least require that those on the receiving end be tried first by a jury. And the trend may be to allow the States even more leeway than federal courts, for there is nothing in the Court's opinion to prohibit a State from allowing more than five years' probation, or as much as 10 or 15 years. Thus far, we have not held the States to as strict a standard as the federal system; for while we have ruled that no crime punishable by more than six months may be tried without a jury in the federal courts (see *Cheff, supra*), we have yet to find a jury necessary for any crime punishable by less than two years in state courts (see *Duncan, supra*). Furthermore, under the Court's practice of looking to legislative definitions and "existing . . . practices in the Nation," *Duncan, supra,* at 161, for indications of the seriousness of crimes in determining when the right to jury attaches, the Court might accept a State's legislative efforts to allow an indefinite period of probation for professed "petty" offenses. Even at present many States allow more than five years' probation, and some States allow trial courts to impose unlimited probationary sentences.[2]

---

[2] See the appendix to the Government's brief before this Court for a survey of state probation law and practices.

## II.

The painful aspect of today's decision is that its rationale is as impermissible as its consequences. The Court's holding that petitioner's sentence is "within the limits of the congressional definition of petty offenses" is no less than astounding. In the first place, Congress acted quite without regard to the crime classifications set out in 1909 (the present section is based on the Act of March 4, 1909, c. 321, § 335, 35 Stat. 1152) when it passed the probation system in 1925 (Act of March 4, 1925, c. 521, § 1, 43 Stat. 1259). There is simply no indication in the statute itself or its legislative history that 18 U. S. C. § 3651 was intended to modify, complement, add to, or even relate to the petty offense definition, or any definition, in 18 U. S. C. § 1; the reference to capital or life sentence cases, for which probation is prohibited, is made in § 3651 itself, without citation to 18 U. S. C. § 1. More importantly, however, there is every indication that Congress affirmatively determined that probation should *not* affect its earlier definitions by making probation freely available to virtually *all* crimes—including most felonies not thereby rendered "petty" because of probation's imposition. In the second place, even if Congress did "add" probation to the "petty" offense definition, the expanded definition would not necessarily be as binding on us as the Court seems to suggest. We cannot, it seems to me, place unlimited reliance on legislative definitions and "existing . . . practices in the Nation" and thereby allow Congress and the States to rewrite the Sixth Amendment of the Constitution by simply terming "petty" any offense regardless of the underlying sentence.

The Court's misapprehension of the probation statute can better be understood by analyzing first how it arrived at its decision. In holding that a trial judge, acting without a jury conviction, can sentence a man to serve at least five years on probation and an additional six

months, the Court purports to rely on, and not overrule, *Cheff, supra,* where we held that six months' imprisonment was the maximum sentence that could be imposed without a jury in federal cases. We arrived at that determination by seeking "objective indications of the seriousness with which society regards the offense," *ante,* at 148, the standard we have traditionally used in determining whether a particular crime can be classified as "petty" and thus tried without a jury. See *District of Columbia* v. *Clawans,* 300 U. S. 617 (1937); *Duncan* v. *Louisiana, supra; Bloom* v. *Illinois, supra.* As the Court notes, *Cheff* found the "objective criteria" by analogy to 18 U. S. C. § 1, the congressional definitional section which states that an offense punishable by six months or less is a "petty" offense, and followed that determination in ruling that a six months', nonjury contempt sentence was permissible. The Court pursues that analogy in this case. Thus, it argues that since Congress has also provided that up to five years' probation can be imposed for a "petty" offense, apparently without making such an offense "serious" under the definitional section, petitioner, whose sentence fell within that five-year limit, was not entitled to a jury trial.

Such a leap from the definition of petty offenses in 18 U. S. C. § 1 to the provision for probation in 18 U. S. C. § 3651 ascribes to Congress a determination I am certain it did not make, and misconstrues the nature of the probation statute. The probationary scheme does not purport to set specific sentences for particular classes of crimes, thus evincing an "objective indication" of the "seriousness with which society regards the offense," the standard we have used in determining when the right to jury trial attaches. Rather, it is designed to allow a sentencing judge to put aside the statutorily prescribed prison term and to try instead to fashion a specific, ameliorative sentence for the individual criminal before the court. The sentence should be consistent with pro-

bation's basic purpose of providing "an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement," *Roberts* v. *United States,* 320 U. S. 264, 272 (1943), before such imprisonment "should stain the life of the convict," *United States* v. *Murray,* 275 U. S. 347, 357 (1928).

The focus of probation is not on how society views the offense, but on how the sentencing judge views the offender. "Through the social investigation of the probation officer and the power to place suitable cases on probation," the House Judiciary Committee stated in support of the first probation bill to be signed into law, "the court is enabled to discriminate and adapt its treatment to fit the character and circumstances of the individual offender." H. R. Rep. No. 423, 68th Cong., 1st Sess., 2 (1924). The necessity to "individualize each case, to give that careful, humane and comprehensive consideration to the particular situation of each offender," we have held, requires the "exercise of a broad discretion" and "an exceptional degree of flexibility." *Burns* v. *United States,* 287 U. S. 216, 220 (1932). In exercising that broad discretion, of course, a sentencing judge can utilize probation in all but capital or life sentence cases.

In orienting the probation system toward the individual criminal and not the crime itself, and in making it available for felonies and misdemeanors as well as petty offenses, Congress clearly did not intend the maximum five-year probation period to be any indication of society's views of the seriousness of crimes in general, except to provide that probation is inappropriate for capital or life sentence cases. Although the Court holds that "Congress has not viewed the possibility of five years' probation as onerous enough to make an otherwise petty offense 'serious,'" presumably the Court would not be willing to hold that the upper limit of only five years' probation

is light enough to make any serious offense "petty." For I do not take the Court's opinion to mean that in areas of economic and public health regulation such as tax, antitrust, and drug control, where probation is often granted, a trial judge could deny a defendant's demand for a jury trial by stating at the outset his intention to grant probation with a maximum of six months' imprisonment on violation of its terms. I raise the possibility[3] only because I think it shows that Congress enacted the probation system quite without regard to the "petty-serious" crime distinction, intending the system to have no impact on legislative judgments as to the relative seriousness of classes of crimes generally.

In view of this background, the fact that Congress could not, in all events, limit the right to a jury trial by the use of statutory "definitions," and the dangers noted above in allowing a six-months-plus sentence to be imposed without a jury, I would stand by this Court's decision in *Cheff*, *supra*, and say that six months is the maximum permissible nonjury sentence, whether served on probation or in prison, or both. Thus, only a two months' jail term could be imposed in federal courts, for instance, if probation were revoked after four months. I dissent from the Court's opinion holding otherwise.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

I cannot say what is and what is not a "petty crime." I certainly believe, however, that where punishment of as much as six months *can* be imposed, I could not classify the offense as "petty" if that means that people tried for

---

[3] The actual question could never arise, of course, under the Court's present practice of looking, in noncontempt cases, to the statute for the maximum penalty that could be imposed, rather than the sentence actually meted out, for its determination that a jury is or is not required.

it are to be tried as if we had no Bill of Rights. Art. III, § 2, of the Constitution provides that:

> "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ."

And in Amendment VI it is provided that:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

Neither of these provisions gives any support for holding that a defendant charged with a crime is not entitled to a jury trial merely because a court thinks the crime is a "petty" one. I do not deny that there might possibly be some offenses charged for which the punishment is so minuscule that it might be thought of as petty. But to my way of thinking, when a man is charged by a governmental unit with conduct for which the Government can impose a penalty of imprisonment for any amount of time, I doubt if I could ever hold it petty. (See my dissent in *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216, 223.) Nor do I take any stock in the idea that by naming an offense for which a man can be imprisoned a "contempt," he is any the less charged with a crime. See *Green* v. *United States,* 356 U. S. 165, 193 (dissenting opinion), and *United States* v. *Barnett,* 376 U. S. 681, 724 (dissenting opinion). Those who commit offenses against courts should be no less entitled to the Bill of Rights than those who commit offenses against the public in general.

For these reasons I dissent from the Court's holding that the petitioner in this case is not entitled to a trial by jury.