In re **PUERTO RICO NEWSPAPER GUILD LOCAL 225, affiliated with the Newspaper Guild, AFL–CIO, CLC, a/k/a Union de Periodistas Artes Graficas y Ramas Anexas, and the Newspaper Guild, AFL–CIO, CLC, Respondents-Appellants.**

No. 72–1177.

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1973.

Decided April 18, 1973.

Francisco Aponte Perez, Santurce, P. R., with whom George L. Weasler, Santurce, P. R., was on brief, for appellants.

Marvin Roth, Supervisory Attorney, Washington, D. C., with whom Peter G. Nash, Gen. Counsel, Julius G. Serot, Sp. Counsel to the Gen. Counsel, and Edward A. Klein, Atty., Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a criminal contempt judgment entered against the appellants, Puerto Rico Newspaper Guild Local 225, (the Local) and the Newspaper Guild, AFL–CIO, CLC (the International) for violating a temporary restraining order issued by the district court pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) (the Act). The primary question before us is whether the court, having denied appellants' request for a jury trial, committed reversible error in sentencing them to pay aggregated fines in excess of $500. We conclude that, under the circumstances of this case, the court did not err in imposing a sentence of this magnitude, and since we find no merit in the other contentions raised by appellants, affirm the judgments below.

The contempt order grew out of a strike by the members of Local 225 against El Mundo, Inc. (the Company). On March 16, 1972, the Regional Director of the National Labor Relations Board, acting pursuant to § 10(j) of the Act, petitioned the district court for a temporary restraining order preventing the appellants from engaging in mass picketing and other threats and acts of violence against persons attempting to enter or leave the premises of the Company. Finding reasonable cause to believe that unfair labor practices were being committed by the appellants, the court granted the Board's request for a temporary restraining order, and on April 6 superseded this order with a temporary injunction. In the meantime, the Board had initiated the present contempt proceeding against the appellants for their violation of the original restraining order. In response to the Board's motion, the unions filed an answer which in substance denied the allegations of the petition and raised various affirmative contentions, including a demand for a jury trial. The court subsequently denied this demand, but stated that any possible fine against the appellants would not exceed $500 for each individual act of contempt of which they were convicted. The court also refused to disqualify itself from hearing the contempt proceeding merely because it had issued the original restraining order, and similarly denied appellants' motion to exclude the Board's attorneys as co-counsel in the prosecution of the case. Following a three day hearing, the court found both unions guilty of multiple instances of contempt, and imposed varying fines of not more than $500 on each individual count. The total amount of the fines were $9,050 and $5,650 against the Local and the International respectively.

Appellants' argument that the court was precluded from imposing a fine of over $500 in the absence of a jury trial or a waiver thereof is dependent on both parts of a two-pronged analysis. First, appellants rely on Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) to establish the proposition that when a fine exceeding $500 is imposed for contempt of court, the offense must be considered a "serious" one triable by jury as a matter of constitutional right. Secondly, appellants argue, citing United States v. Seale, 461 F.2d 345 (7th Cir. 1972) and In re Dellinger, 461 F.2d 389 (7th Cir. 1972), that this supposed limitation on a trial court's power to impose contempt sentences in the absence of a jury trial may not be avoided by an aggregation of penalties, notwithstanding that the fine on each individual contempt count is less than $500. The issues thus presented, while not entirely novel to the federal courts, see United States v. R. L. Polk and Co., 438 F.2d 377 (6th Cir. 1971), are questions of first impression in this circuit.

We may start from the common ground that there is a constitutional

right to a jury trial in cases of serious criminal contempts, Bloom v. Illinois, *supra*, and that the seriousness of the offense is to be determined by reference to the penalty imposed.[1] *Id.* 391 U.S. at 211, 88 S.Ct. 1477; *see* Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L. Ed.2d 629 (1966). Our problem in the present case, however, is that in defining the penalties which make a particular offense a serious one, the Supreme Court has addressed itself directly only to sentences of imprisonment, and not to the imposition of fines. *See* Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Bloom v. Illinois, *supra*; Duncan v. Louisiana, *supra*; Cheff v. Schnackenberg, *supra*. Appellants point to the Court's reliance in *Duncan* on the "objective criteria" set forth in 18 U.S.C. § 1 for a definition of serious and petty offenses. Since that section defines a petty offense as "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both," appellants contend that they were entitled to a jury trial under a logically necessary extension of *Duncan* and *Bloom*. Their position in this regard is not without authoritative and well-reasoned support. *See* United States v. R. L. Polk and Co., *supra*. The *Polk* case, however, involved a fine of $35,000 imposed on a corporation for a single instance of contemptuous conduct, and is therefore clearly distinguishable from the aggregated penalty situation now before us. Since we believe that appellants' reliance on *Seale* and *Dellinger* in support of their second proposition is misplaced, we prefer not to consider the merits of the *Polk* holding in the present context.

In *Seale,* the defendant was sentenced to consecutive terms of three months imprisonment for each of sixteen acts of misbehavior committed during the course of a criminal trial. These sentences were imposed summarily by the trial court after a mistrial had been declared as to Seale and his case severed from that of his codefendants. The Court of Appeals reversed Seale's contempt conviction, holding that, where a trial judge postpones the exercise of his summary contempt power to the conclusion of court proceedings, the sentences imposed must be cumulated for purposes of determining the defendant's right to a jury trial. In his persuasive opinion for the court, Judge Cummings emphasized the possible abuses to which the contempt power might be subjected, the difficulty of reviewing the trial court's determination that the defendant's contemptuous acts had indeed constituted discrete incidents, and the availability of the less potentially prejudicial alternative of an instantaneous, rather than a postponed, exercise of the contempt power. The court, however, expressly refrained from passing on the question of whether the aggregation rule would apply in the case of an indirect contempt for violation of a court injunction, noting that in such instances the contempt power "is not necessarily susceptible to the same abuses and amenable to the same, less potentially prejudicial, immediate action alternative" which had led to the rule's adoption. 461 F.2d at 356 n. 18. In answering the question thus left open by the court in *Seale,* we note that in that case, the trial judge had been subjected to personal insults and villification of a kind highly likely to strike "at the most vulnerable and human qualities

---

1. In most situations, the seriousness of an offense will be determined by looking to the maximum penalty authorized by statute for its commission. Baldwin v. New York, 399 U.S. 66, 72–74, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Duncan v. Louisiana, 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Since

Congress has left the penalty for criminal contempts within the discretion of the district court, however, the sentence actually imposed is the most relevant factor in such cases. Frank v. United States, 395 U.S. 147, 148–149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969).

of a judge's temperament." Bloom v. Illinois, *supra*, 391 U.S. at 202, 88 S.Ct. at 1482. The appellate court's consequent concern that a unitary course of contemptuous conduct might be "spread out" in order to punish a serious offense summarily may be best understood in light of these circumstances. The possibility of such abuse, however, is greatly reduced where, as here, the contumacious behavior involved is the violation of a court injunction rather than a direct contempt. Such conduct, while in disobedience of the court's authority, does not involve the kind of affront to a trial judge likely to cause an identification of "offense to self with obstruction to law." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). Thus, since there is no particular need to be wary of the trial court's detachment and judicial objectivity in the type of case before us, we think that appellate review of the original discreteness determination [2] will adequately protect the rights of defendants not to receive "serious" sentences for criminal contempts without the benefit of a jury trial.

There is also significance in the fact that the immediate action alternative in indirect contempt situations is neither convenient nor generally desirable. Although the Board could move the restraining court for a contempt citation immediately after the first violation, the procedure is far more cumbersome, ponderous, and costly than summary judicial sanction in the midst of a trial. In addition, were we to impose a general aggregation rule, we would encourage the mechanical application of the bludgeon when patience, mediation, negotiation, or even stern warning is the more appropriate response.

■ ■ Moreover, there is nothing novel in distinguishing direct from indirect criminal contempts for purposes of defining the procedural safeguards necessary to protect the rights of defendants. Rule 42(b) of the Federal Rules of Criminal Procedure, for example, disqualifies a judge from presiding over a contempt hearing where "the contempt charged involves disrespect to or criticism of [that] judge," but disobedience of a court order has been held not to fall within this category.[3] See Nilva v. United States, 352 U.S. 385, 395–396, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957). Similarly, while due process requires that a judge who has been "reviled" by a defendant not sit at the alleged contemnor's trial, not every challenge to the court's authority will result in such a disqualification. Mayberry v. Pennsylvania, 400 U.S. 455, 465–466, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). In our view, these decisions buttress our conclusion that the *Seale* aggregation rule

2. In the present case, appellants do not challenge the district court's determination that the Local and International committed 21 and 13 separate acts of contempt respectively, a finding which, in any event, is amply supported by the record. Our holding in this regard is in no way inconsistent with our recent decision in Baker v. Eisenstadt, 456 F.2d 382 (1st Cir.), cert. denied, 409 U.S. 846, 93 S.Ct. 110, 34 L.Ed.2d 87 (1972). The issue in that case was whether multiple contempt sentences could properly be imposed for an illegitimate refusal to testify where (1) the recalcitrant witness had given notice at the outset of his "testimony" that he would refuse to answer all questions relating to a particular subject and (2) an answer to any of the questions propounded might have been construed as a waiver of a claimed fifth amendment privilege. Our holding in *Baker* that, under these circumstances, each individual refusal to answer could not be treated as a separate contempt is clearly not determinative of the discreteness issue where multiple violations of a court injunction have taken place.

3. On this basis, we dispose of appellants' contention that the court erred in not disqualifying itself from hearing the contempt proceeding because it had issued the original restraining order.

need not, absent exceptional circumstances, be extended to cases of indirect criminal contempts. Accordingly, the judgment below is affirmed.[4]

Affirmed.

---

4. Finally, we find no merit in appellants' contention that the district court erred in designating attorneys of the National Labor Relations Board to prosecute the criminal contempt proceedings. *See, e. g.,* United States v. Lederer, 140 F.2d 136, 138 (7th Cir.), cert. denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944); *cf.* Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 269–270, 60 S.Ct. 561, 84 L.Ed. 738 (1940); Schauffler v. United Ass'n of Journeymen, 148 F.Supp. 704, 706 (E.D. Pa.1956), aff'd, 246 F.2d 867 (3d Cir. 1957).