In re **UNION NACIONAL** de **TRABAJADORES** et al.,
Petitioners.

No. 74–1073 Original.

United States Court of Appeals,
First Circuit.

Aug. 14, 1974.

Levin H. Campbell, Circuit Judge, filed a dissenting opinion.

Mark L. Amsterdam, David Scribner, New York City, Ismael Delgado Gonzalez, Emilio Soler Mari, Rio Piedras, P. R., Elizabeth M. Schneider, Nancy Stearns, New York City, and Juan Mari Bras, Rio Piedras, P. R., on petition and briefs for petitioners.

Julio Morales-Sanchez, U. S. Atty., and Ignacio Rivera Cordero, Asst. U. S. Atty., on brief for United States.

Marvin Roth, Deputy Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, and Gerald Brissman, Associate Gen. Counsel, on brief for National Labor Relations Board.

Frank J. Donner, Robert Z. Lewis, James G. Mauro, Jr., Winn Newman, Washington, D. C., Ruth Weyland, Harold I. Cammer, New York City, Norman Leonard, San Francisco, Cal., John G. Ratcliff, Martha Bergmark, Elliot Andahman, Hattiesburg, Miss., Eugene G. Eisner, I. Philip Sipser, and Stephen L. Fine, New York City, on brief for United Electrical, Radio and Machine Workers of America (UE) and others, Union, amici curiae.

Lance Compa, Newtonville, Mass., Claudia Conway, Warren Leiden, Joann Margulies, Emily Novick, Ellen Schmidt, Bobby Solet, Boston National Lawyers' Guild, George B. Washington, and Kathleen Weremuik Segal, Cambridge, Mass., on brief for the Labor Committee of the National Lawyers Guild, amici curiae.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

COFFIN, *Chief Judge.*

Petitioners, a union and its officers, cited for criminal contempt arising out of alleged violations of an injunction granted pending decision on an unfair labor practice charge, sought mandamus to compel the holding of the trial in Spanish and before a jury. We denied extraordinary relief as to the language issue and asked for briefs as to the jury trial issue. The petitioners, the National Labor Relations Board, the United States Attorney, and two amici have submitted briefs.

The present issue is whether this court should grant a writ of mandamus to compel the district court to grant a jury trial to the Union Nacional de Trabajadores and its officers (hereinafter UNT) on an alleged criminal contempt. The alleged contempt arose out of a district court order, pursuant to section 10(j) of the National Labor Relations Act (hereinafter NLRA), 29 U.S.C. § 160(j), enjoining the UNT from striking against Construcciones Werl, Inc., without complying with the notice and waiting requirements of section 8(d) of the NLRA. The order was entered on August 30, 1973, and on September 18 the NLRB and the U.S. Attorney requested the court to institute criminal contempt proceedings against UNT for violating the order. UNT moved for a jury trial and the district court denied the motion. UNT subsequently filed the instant petition for a writ of mandamus in this court.

■ The Supreme Court, in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), has set restrictive general guidelines on the use of mandamus:

"The peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' . . . While the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction,' it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." 389 U.S. at 95, 88 S.Ct. at 273. (Citations omitted.)

This is in substantial agreement with the Court's previous statements indicating that the petitioner for mandamus has "the burden of showing that its right to issuance of the writ is 'clear and undisputable.'" Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 149, 98 L.Ed. 106 (1953).

■■ There seems to be some relaxation of this requirement when the petitioner seeks enforcement of a right to a jury trial. In a civil case, there is no doubt that mandamus is appropriate if a jury trial is being wrongfully denied,

even, it would appear, when the decision whether such right exists is a close or complicated one. Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 511, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Filmon Process Corp. v. Sirica, 126 U.S.App.D.C. 395, 379 F.2d 449, 451 (1967).[1] As the court emphasized in *Will*, however, in a criminal case the general policy against piecemeal appeals takes on added weight because "the defendant is entitled to a speedy resolution of the charges against him." 389 U.S. at 96, 88 S.Ct. at 273. In this case defendants are seeking the mandamus and hence can be seen as waiving, to a limited extent, their right to a speedy trial.

We take the position that mandamus would be appropriate if a jury trial were required, and any denial of mandamus should be made only if either the case has not been adequately presented or there is no such right to a jury trial. Since the issue has been adequately raised, and fully briefed, we shall rest decision on our view of the merits.

■■ It is clear that UNT has no constitutional right to a jury trial. The district court has stated that in any event none of the defendants in the contempt case will be sentenced to more than six months imprisonment or fined in excess of $500. This court has adopted the maximum penalty rule in the context of contempt for disobeying a labor injunction, In re Puerto Rico Newspaper Guild Local 225, 476 F.2d 856 (1st Cir. 1973). Whether, therefore, the charged contempt is a major or petty offense must be considered to be a function of what the maximum penalties may be rather than, as the National Lawyers Guild, as amicus curiae, argues, a function of the importance of the defendant's charged behavior on some ex-

ternal scale of values. Offenses punishable by no more than six months imprisonment or a $500 fine may be considered petty offenses, for purposes of determining whether a constitutional right to a jury trial attaches. Frank v. United States, 395 U.S. 147, 149–150, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); In re Puerto Rico Newspaper Guild, *supra*.

The central issue in this case is whether UNT is guaranteed a right to a jury trial because of 18 U.S.C. § 3692. Up to 1948 the statute requiring jury trials in labor injunction contempt cases was § 11 of the Norris-LaGuardia Act, 29 U.S.C. § 111. It was limited to contempt proceedings arising under the Norris-LaGuardia Act. Up to this time only private employers could, under the very restrictive provisions of that Act, 29 U.S.C. §§ 101–115, obtain injunctive relief against a union and its officers. Then in 1947, with the passage of the Taft-Hartley Act the National Labor Relations Board was also empowered to seek injunctive relief to stop the commission of alleged unfair labor practices pending final decision under sections 10(h) and 10(j) of NLRA. At the same time section 10(h) of NLRA, which provided that "the jurisdiction of courts sitting in equity shall not be limited by [sections 1–15 of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115]." was made applicable to the newly authorized Board-requested injunctions. In the following year, 18 U.S.C. § 3692 replaced 29 U.S.C. § 111. While part of a general recodification, section 3692 dropped the language of specific reference to Norris-LaGuardia Act contempt proceedings, and was relocated under Title 18, "Crimes and Criminal Procedure". It reads:

"In all cases of contempt arising under the laws of the United States governing the issuance of injunctions

---

1. The cited cases involve a constitutional jury trial right, while the instant case involves at best a statutory right to a jury trial. *See infra.* It would appear that the lower court would be equally unlawful, however, in denying either a constitutional or a

statutory right to a jury trial, *see* United States v. Igoe, 331 F.2d 766 (7th Cir. 1964), cert. denied, 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965), at least insofar as it would influence a decision to grant mandamus.

or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed . . . ."

It is our task to try to interpret section 3692. In so doing we shall need to determine whether it carries a broader meaning than the old section 111, and if so, whether section 10(h) in turn narrows the impact of any such broader coverage. We are not helped to any substantial degree by legislative history [2] or by decided cases.

Two cases are in point. In Madden v. Grain Elevator, Flour and Feed Mill Workers, ILA, Local 418, 334 F.2d 1014, 1020 (7th Cir. 1964), the court, without extensive consideration of alternatives, summarily concluded:

"Section 3692 covers matters formerly found in § 11 of the Norris-La-Guardia Act. It is inapplicable to a proceeding under the National Labor Management Relations Act [i. e., NLRA]. This inapplicability is evidenced by § 10(h) (29 U.S.C.A. § 160 (h)), of said Act which excludes such proceedings as injunction and enforcement from the limitations of the Norris-LaGuardia Act." (Citations omitted.)

The court in Hoffman v. International Longshoremen's & Warehousemen's Union, Local No. 10, 492 F.2d 929 (9th Cir. 1974), spoke to the same end, stressing the difference in purposes served by the Norris-LaGuardia Act and NLRA:

"The purposes of the Norris-La-Guardia Act to limit and restrict the equitable powers of the courts to intervene in labor disputes between private employers and unions are not the same as the powers involved in the administrative scheme of the Labor Management Relations Act [NLRA] and its amendments. There is no reason to believe that Congress intended its grant of equitable powers to district courts as embodied in section 10(l) of the Act, 29 U.S.C. § 160(l), to be repealed by the recodification of section 11 of the Norris-LaGuardia Act, 29 U.S.C. § 111, into 18 U.S.C. § 3692 . . . ." (Citations omitted.) 492 F.2d at 934.

Neither case, in our opinion, revealed sufficient analysis underlying the conclusion to be preclusive or persuasive. Madden simply states a conclusion, while, as we note below, Hoffman's fear of any limitation on the Board's equitable powers is misplaced.[3]

Addressing first the reach of § 3692, we find it extremely difficult to ignore the natural meaning of ordinary words. Our first inquiry is the meaning of "injunctions or restraining orders in any case involving or growing out of a labor dispute." The instant contempt proceeding arises out of a temporary injunction issued pursuant to section 10(j) of the NLRA, 29 U.S.C. § 160(j). Section 10 (j) grants the district courts jurisdiction to issue injunctions, upon petition by the NLRB, in cases involving an alleged unfair labor practice as defined in 29 U.S.C. § 158. A facial reading of § 3692 would therefore make it apply to many contempt proceedings under section 10 (j) injunctions, since many cases involving an unfair labor practice arise out of a

2. The Board points to H.Rep.No.304, 80th Cong., 1st Sess., p. A 30, where it is said that "changes in phraseology" in the new Title 18 did not affect the "meaning or substance" of the old Section 11 of the old Norris-LaGuardia. Yet this statement was part of the explanatory note regarding the recodification of §§ 1, 21, and 24 of the Clayton Act (old 18 U.S.C. §§ 386, 387, 389 and 390) to § 402 of Title 18, in which there were clearly no changes in substance or meaning. No such statement is contained in § 3692.

3. The cases cited by Madden and Hoffman merely deal with the question of the jurisdiction of the courts to issue injunctions, not the scope and applicability of § 3692. See, e. g., Building and Construction Trades Council v. Alpert, 302 F.2d 594, 598 (1st Cir. 1962).

"labor dispute".[4]  In the instant case, the ground on which the Board's regional attorney sought an injunction was UNT's failure to comply with the notice and waiting requirements of sections 8(d)(3) and (4) of NLRA prior to engaging in a strike arising from contract negotiations.  This would seem to be clearly a controversy concerning representation in negotiating terms or conditions of employment.  Indeed, section 8(d)(3) requires that the Federal Mediation and Conciliation Service be given notice of the existence of a "dispute."

That the language of § 3692 would facially apply to many NLRA injunction situations, such as this one, is borne out by the source of the language itself, apparently section 1 of the Norris-LaGuardia Act, 29 U.S.C. § 101.  That section applies to cases "involving or growing out of a labor dispute."  If that language did not apply to at least some NLRA situations, there would be no reason for Congress to include a provision stating that section 1 did not apply to certain parts of the NLRA.  Yet of course Congress did include such a provision in section 10(h) of the NLRA, 29 U.S.C. § 160(h), which specifically exempted the jurisdiction of courts "sitting in equity" under section 10 of the NLRA, 29 U.S.C. § 160, from the limitations of Norris-LaGuardia.

Our second inquiry is directed to the words "In all cases of contempt arising under the laws of the United States". Section 3692 is directly derived from section 11 of the Norris-LaGuardia Act, formerly 29 U.S.C. § 111 (1940 ed.).  It was recodified in 1948 into 18 U.S.C. § 3692.  Prior to the recodification, it applied, in terms, only to injunctions issued pursuant to the Norris-LaGuardia Act.  At the time of recodification, its specific reference to Norris-LaGuardia was deleted and it was made to apply to "all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute."  Aside from the change in the language itself there was no contemporaneous manifestation of congressional intent to broaden the coverage of the section.  The new language, moreover, tracks almost verbatim the language of section 1 of the Norris-LaGuardia Act, 29 U.S.C. § 101, and although a specific reference to that act would have been clearer, it is obvious that the language of § 3692 was primarily intended to cover the Norris-LaGuardia Act.  On the other hand, the recodification was enacted as positive law, placed in another title, and the original section 111 of 29 U.S.C. was repealed. If this were an ordinary statute such a clear change in language from a restrictive phrasing to a broader one would negate any inference that the restrictive phrasing was still to be applied.

This is, however, not an ordinary statute, but one infused with a national policy arrived at after a painful and lengthy period of strife and debate.  Absent any contemporary and significant legislative history, it seems to us entirely plausible that the Congress recognized that the conditions which led it to grant authority to the Board to petition for injunctive relief would also lead to its not infrequent use.  This has, of course, proven to be the case, with Board-requested injunctions now being far more common than those requested by employ-

---

4. Given the broad definition of "labor dispute" in both 29 U.S.C. § 113(c) (Norris-LaGuardia Act) and 29 U.S.C. § 152(9) (NLRA), both of which definitions include, inter alia, "any controversy . . . concerning the association or representation of persons in negotiating . . . terms or conditions of employment", many controversies concerning unfair labor practices would by definition involve or grow out of labor disputes.

We distinguish cases arising out of unfair labor practices from those arising under statutes vesting the government with authority to enforce compliance with more sharply defined federal standards which are not subject to bargaining as in Mitchell v. Barbee Lumber Co., 35 F.R.D. 544 (S.D. Miss.1964) and In re Piccinini, 35 F.R.D. 548 (W.D.Pa.1964) [Fair Labor Standards Act].

ers. So viewing this newly created device, the Congress might reasonably have seen fit to apply to it the same jury trial requirement as had previously attached to Norris-LaGuardia contempt proceedings. Indeed, were § 3692 to be read as identical in coverage with its predecessor section, the Congress in 1947 and 1948 would have worked the irony of creating a new and more easily obtained kind of labor injunction while, for practical purposes, confining the old jury trial protections to an obsolescing kind of injunction.

■ We therefore read § 3692 as carrying the plain meaning of its words and as including "all cases of contempt arising under the *laws* of the United States governing the issuance of injunctions . . . in *any* case involving or growing out of a labor dispute. . . ." (Emphasis supplied.)

This, however, does not settle the question before us. For we have to deal with section 10 of the Taft-Hartley Act as amended the year before § 3692 took its present form, by the same Congress. Section 10(h) of the NLRB, 29 U.S.C. § 160(h), unchanged in the current statute, stated that in granting or enforcing Board-requested injunctive relief in connection with alleged unfair labor practices, "the jurisdiction of courts sitting in equity shall not be limited by [the provisions of Norris-LaGuardia]." After the section was amended in 1947, this exemption provision was made to apply to the new section 10(j) under which the present injunction was issued. In the final House Conference Report No. 510, on H.R. 3020, Labor-Management Relations Act, 1947, (Taft-Hartley Act), 80th Cong., 1st Sess., the Committee described the exemption provision as follows:

"Sections 10(g), (h), and (i) of the present act, concerning the effect upon the Board's orders of enforcement and review proceedings, making inapplicable the provisions of the Norris-LaGuardia Act in proceedings before the courts, were unchanged . . . ."

The Board argues that section 10(h) "Thus expressly excludes judicial proceedings under the NLRA, both injunction and enforcement, from the limitations, of the Norris-LaGuardia Act". It also claims that the entire regulatory scheme created for Board supervision of labor-management relations would be aborted if the Board had to commit "to a panel of untrained laymen, a jury, the final enforcement step of the Act." This seems to us to overstate the problem, to ignore the policy considerations bearing on a criminal contempt proceeding and, in the light of the policy considerations, to read section 10(h) as carving out an exemption broader than its language suggests.

■ It is of course clear that courts must have the power to enforce injunctive orders by civil contempt proceedings. Alleged unfair labor practices may be halted, with full recourse to coercive sanctions necessary to enforce compliance with court orders. What we are dealing with in this case is the question of punishment after the event, not a proceeding which will interrupt or delay enforcement of injuctions. This involves nothing of the kind of expertise which is supplied by the Board in determining whether or not an act constitutes an unfair labor practice. It involves only the determination whether individuals or groups did in fact disobey, with requisite knowledge and intent, a court order so as to impose criminal sanctions.[5] The fact situations and evidence involved in such determinations are ordinary grist for the judgments of juries. Indeed, since a section 10(h) injunction may be obtained without the high threshold of a showing of harm re-

5. The issues at this contempt trial would seem to revolve about whether defendants continued to strike after the injunction, whether they failed to instruct members not to strike, whether defendants made certain public statements and threats, and took part in demonstrations.

quired by a Norris-LaGuardia injunction, 29 U.S.C. § 107, we fail to see why need for a jury to decide criminal contempt issues arising out of such proceedings is diminished. That the threat of criminal contempt proceedings is a real deterrent to flagrant violation is shown by the rarity of the proceedings themselves. Moreover, while jury participation seems as appropriate as ever in criminal contempt proceedings, reposing sole dispositive power in the judge seems as inappropriate as ever. The Judge, who granted the injunction at the request of the Board, would be asked to mete out punishment if he finds that his order has been deliberately flouted. Appropriateness is not enhanced by the judge predetermining, before the extent or seriousness of the disobedience can be fully known, the maximum fines or sentences to be imposed in order to decide whether a jury trial is mandated by the constitution.

■ Finally, it seems to us that section 10(h) cannot comfortably be read as insulating criminal contempt proceedings following the issuance of a Board-requested injunction from the requirement of a jury trial. In the first place, at least in this context, it may be doubted whether the vindication or punishment function served by criminal contempt proceedings can be said to be embraced within the section 10(h) language of "granting . . . a restraining order, or . . . enforcing, modifying, and enforcing as so modified, or setting aside . . . an order". Whether or not this is so, because of the deeply ingrained Norris-LaGuardia policy of requiring jury trials in criminal contempt cases, because of the appropriateness of jury decision in such cases, and because of the effect, marginal if any, on Board oversight of labor relations, we read narrowly the critical words "the jurisdiction of courts sitting in equity."

■■ We find it difficult to think of a court sitting to mete out punishment for past offenses as a court "sitting in equity". Criminal contempt proceedings can arise from proceedings begun in either law or equity. While "contempt" generically may "sound in" equity, a criminal contempt proceeding really stems from the inherent power of a court, not merely a chancellor, to vindicate its authority. It is sui generis. United States v. Barnett, 346 F.2d 99 (5th Cir. 1965). The very fact that section 3692 is now placed under Title 18, Crimes and Criminal Procedure, adds to our conviction that proceedings thereunder cannot be equated with proceedings before a court specifically described as "sitting in equity".

But we have more direct authority. The Supreme Court in Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924), faced the question whether the predecessor of 18 U.S.C. § 3691, providing for a jury trial in contempt proceedings, following a Clayton Act injunction, should, though in terms not limited to criminal contempts, be so interpreted. The Court stated that if the proceeding contemplated by the statute be for a criminal contempt

"—since the proceeding for criminal contempt, unlike that for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause, (Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444–446, 451, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A. [N.S.] 874)—we are at once relieved of the doubt which might otherwise arise in respect of the authority of Congress to set aside the settled rule that a suit in equity is to be tried by the chancellor without a jury unless he choose to call one as purely advisory."

While the Court was dealing with criminal contempts which were also, independently, criminal offenses, we think its observations support our conclusion that any exemption from a jury trial requirement in criminal contempt proceedings is not adequately accomplished by

confining the exemption to courts sitting in equity.[6]

Finally, we cannot refrain from observing that, had Congress wished to exempt NLRA completely from Norris-LaGuardia it knew how to do so. 29 U.S.C. § 178(b), in dealing with a new power given district courts to issue injunctions in certain circumstances involving a peril to the national health or safety, states "[i]n any case, the provisions of sections 101–115 of this title [i.e., Norris-LaGuardia], shall not be applicable". Yet it left section 10(h) referring only to the jurisdiction of a court sitting in equity when it reenacted it as part of the same statute.

█ Our conclusion, that § 3692 requires criminal contempt proceedings stemming from alleged violations of a NLRA injunction to be tried before a jury is, we feel, an appropriate accommodation of the polices which inform the NLRA and § 3692. It leaves to the Board full power to request temporary relief and, in the event of noncompliance, to coerce obedience through civil contempt proceedings, without delay or interposition of a jury. But it also leaves available, for the rare case when punitive measures are after the fact deemed necessary, the historic protection of a jury trial. In short, the literal interpretations we have given both section 3692 and section 10(h) result in giving some meaningful effect to both provisions. "Our duty . . . is to seek out that accommodation of the two which will give the fullest possible effect to the central purposes of both." Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 216, 82 S.Ct. 1328, 1340, 8 L.Ed.2d 440 (1962) (dissenting opinion, relied upon by the Court in Boys Markets v. Clerks Union, 398 U.S. 235, 249, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)).

So ordered.

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

I reluctantly dissent because I am unable to accept the broad interpretation placed upon 18 U.S.C. § 3692. In the absence of contemporaneous legislative history, it seems strained to impute to legislators working on a recodification of the criminal law an intention to broaden in such a significant way the reach of section 11 of the Norris-LaGuardia Act. The recodification occurred one year after the passage of the Taft-Hartley Act in a setting foreign to substantive revision of the labor law. While the language of the recodification is somewhat more broad than formerly, most of the earlier language was tracked, and it seems most likely to me that a draftsman, perhaps unsophisticated in labor law, was merely trying to carry forward the old statute in a new setting.

In any event, for more than twenty years, the NLRB has construed the statute not to require jury trials. The Supreme Court has stated that "[w]hen faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Ten years ago a federal circuit court supported the agency's position. Madden v. Grain Elevator, Flour and Feed Mill Workers, ILA, Local 418, 334 F.2d 1014 (7th Cir. 1964), cert. denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965). If the statute had been passed recently, I might have found it easier to join the court's position. But it is not a new section, and the agency is not advancing a novel or unreasonable construction. Any change in the interpretation of the law should, in my judgment, come only from Congress.

---

6. *See also* National Labor Relations Bd. v. Hopwood Retinning Co., 104 F.2d 302, 305 (2d Cir. 1939): "As a proceeding for *civil* contempt, this is therefore properly a continuance of the earlier action in this court and is a step in the enforcement of our previous judgment." [Emphasis supplied.]

The fact that in 29 U.S.C. § 160(h) Congress specifically exempted the jurisdiction of courts "sitting in equity" from the limitations of the Norris-La-Guardia Act does not necessarily mean that it must have intended the Norris-LaGuardia Act to apply in some cases. Its language does not become mere surplusage unless it intended to connect the two acts in some instances; rather Congress may have been stressing their differences. *Cf.* United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 1832, 40 L. Ed.2d 341 (1974).

If a literal reading of section 3692 is adopted to justify extending coverage to the Taft-Hartley Act, further problems arise. When the plain meaning of the words are analyzed, it is logically difficult to interpret "all cases of contempt" as limited to all cases of criminal contempt. The majority reasons that when courts enforce injunctive orders by civil contempt, they are "acting in equity" and, thus, 29 U.S.C. § 160(h) precludes the application of the Norris-LaGuardia provisions. However, if section 3692 is interpreted not as a rewriting of section 11 of the Norris-LaGuardia Act but as a new expression of congressional attitude toward labor contempt proceedings, it would have to be independent of the Norris-LaGuardia Act. If it is so independent, then it is not an application of the Norris-LaGuardia Act and arguably not precluded by section 160 (h). I agree, however, with the majority that such a radical revision was certainly not intended.

To the extent that the opinion distinguishes between civil and criminal contempt on the basis of policy considerations underlying jury trials in criminal contempt proceedings, I would prefer to rest solely on the lines of distinction drawn by the Constitution. The Supreme Court's sensitivity to the rights of alleged contemnors, cf. Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), is sufficient protection against the agency's undercutting fundamental policy considerations. Jury trials take more time and cost more money, and they are not ideally geared to this sort of procedure. I see no reason to add one more burden to an already overburdened system when, so far as appears, there is no need to do so.