v.

**IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.**

No. 93–1409.

Supreme Court of Iowa.

May 25, 1994.

Frank Steinbach III of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for plaintiff.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Ray Blase, Asst. County Atty., for defendant.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

M.A. is the mother of a son, Michael, who was adjudicated to be a child in need of assistance. The dispositional order in the juvenile case required the mother to assist in Michael's placement in a special needs educational facility, but she refused. The court then found her in contempt and ordered her to serve thirty days in jail. The court withheld the mittimus and gave her the opportunity to purge the contempt by complying with the dispositional order and all future orders. This certiorari action followed. We annul the writ.

Michael was born on November 10, 1982, and was adjudicated as a child in need of assistance (CINA) on April 8, 1993. *See* Iowa Code § 232.2(6)(c)(2) (1991). In a dispositional order of May 19, 1993, the juvenile court confirmed the CINA adjudication and ordered the child's mother to assist in placing Michael in Orchard Place, a special needs educational facility in Des Moines.

This order required the mother to (1) sign admission papers for Michael to enter the Orchard Place program, (2) complete the Title XIX application, (3) fully cooperate with the admissions process, (4) cooperate with the evaluation by making herself available to the Orchard Place staff as requested, (5) maintain regular contact with Michael by phone or letter while he is in the Orchard Place Program, and (6) take all steps necessary to complete Michael's psychological evaluation with a Dr. Reed. The order provided that a willful violation of these terms would constitute contempt.

Following the dispositional order, a juvenile court officer submitted an affidavit stating the mother failed to complete forms for Michael's admission to Orchard Place and to complete his psychological evaluation with Dr. Reed. The juvenile court ordered Michael to be removed from his mother's custody and an evaluation order to be commenced.

On September 1, the State filed an application to find the mother in contempt, alleging she had willfully failed to comply with the dispositional order. The contempt application was delivered to the mother's counsel and to her last known address. The mother appeared with counsel on September 20 for the hearing. She was again served with a contempt application in the courtroom. The court denied her motion to dismiss for lack of jurisdiction and her request for a jury. It found her in contempt.

The mother contends that the court erred in (1) denying her request for a jury trial, (2) refusing to dismiss the contempt action on the ground the court lacked "jurisdiction" to order her to perform affirmative acts, (3) failing to provide her with adequate preparation time prior to the hearing, and (4) finding sufficient evidence of contempt.

## I. *The Right to a Jury Trial.*

■ The mother claims she was constitutionally entitled to a jury because contempt proceedings are quasi-criminal. *See Zimmermann v. Iowa Dist. Court,* 480 N.W.2d 70, 74 (Iowa 1992). The test is whether the penalty imposed exceeds six months' imprisonment. *Frank v. United States,* 395 U.S. 147, 150, 89 S.Ct. 1503, 1506, 23 L.Ed.2d 162, 166–67 (1969); *cf. Bloom v. Illinois,* 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d 522, 534 (1968) (petty offenders not entitled to a jury).

■ This mother contends that, because the dispositional order required her to perform more than one act, she *could* have been subjected to multiple contempt charges even though only one is involved here. The State's application contained no request for multiple findings of contempt; it merely asserted that she "has failed to comply with the court order of May 19, 1993." The application did not itemize the alleged acts of contemptuous conduct, and the State requested imposition of only one six-month sentence.

The Supreme Court has established a rule determining the necessity for a jury based on the *actual* sentence imposed rather than the length of the potential sentence. In *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), it stated, "we plainly cannot accept petitioners' argument that a contemnor is entitled to a jury trial

simply because a strong possibility exists that he will face a substantial term of imprisonment upon conviction, regardless of the punishment actually imposed." *Id.* at 512, 94 S.Ct. at 2691, 41 L.Ed.2d at 919.

In *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), an attorney was charged with nine counts of contempt and initially sentenced to over four years in jail. The judge thereafter entered a corrected judgment reducing the sentence to six months. The Kentucky Court of Appeals ruled the sentences ran concurrently and sentenced Taylor to only six months in jail. The contemner appealed, alleging he was entitled to a jury trial because a *potential* four-and-one-half-year sentence removed him from the "petty offense" category under *Bloom.* The Court disagreed, stating:

> It is argued that a State should not be permitted, after conviction, to reduce the sentence to less than six months and thereby obviate a jury trial. The thrust of our decisions, however, is to the contrary: in the absence of legislative authorization of serious penalties for contempt, *a State may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months.* We discern no material difference between this choice and permitting the State, after conviction, to reduce a sentence to six months or less rather than to retry the contempt with a jury. In either case, the State itself has determined that the contempt is not so serious as to warrant more than a six-month sentence.

*Taylor,* 418 U.S. at 496, 94 S.Ct. at 2702, 41 L.Ed.2d at 906 (emphasis added) (citation omitted).

This mother was actually charged with only one act of contempt. Under Iowa Code section 665.4(2), the maximum penalty would be six months, and a jury trial was therefore not mandated.

## II. *The Authority of the Juvenile Court.*

While the mother argues that the court did not have "jurisdiction" to order her to act affirmatively with respect to Michael's placement, we consider it rather as a challenge to the court's statutory authority to do so. The court's only authority, according to her, was to remove Michael from her custody.

The juvenile court's order of April 5, 1993, provided that Michael would

> remain in the custody of his mother under the supervision of the Department of Human Services [DHS] on the condition that he be placed at Orchard Place for clinical evaluation as soon as an opening is available and that he be enrolled and attend daily at Cowles Elementary School.

By the time of the May 19 dispositional hearing, Michael was neither placed at Orchard Place nor enrolled at Cowles Elementary School. At that hearing, Judge Novak ordered Michael placed in the custody of DHS, but deferred removal from the mother until Orchard Place was ready to accept him. The court ordered the mother to cooperate in Michael's transfer to Orchard Place. It further stated:

> [S]hould [the mother] willfully violate any of the material conditions as set forth above, ... her violation shall constitute contempt and she shall be punished accordingly.

The gist of the mother's argument is that the juvenile court had authority to remove Michael from her custody, but it did not have the authority to order her to perform any affirmative acts.

█ Iowa Code section 232.102(1)(b) gives the juvenile court the power to transfer legal custody to a facility licensed to provide care for children. The Code also directs the court to permit the child to remain with its parent whenever possible. Iowa Code § 232.102(5) (1993). Construing the juvenile code liberally, as we are directed to do under section 232.1, the court acted within its power by allowing Michael to stay with his mother until Orchard Place could accept him and ordering the mother to cooperate in the placement. This was found by the court to be in Michael's best interest. The court could have transferred Michael into the custody of DHS immediately, thereby alleviating the need for further cooperation by his mother, but it concluded this would not be in his best interests.

We hold that the juvenile court had authority to leave Michael in his mother's custody on certain conditions and to order her to perform reasonable acts to secure his transfer to Orchard Place.

Because the court had authority to enter this order, it also had the power to impose contempt for failure to abide by the order. Iowa Code section 665.2(3) states:

> The following acts or omissions are contempts, and are punishable as such by any of the courts of this state, or by any judicial officer, including judicial magistrates, acting in the discharge of an official duty, as hereinafter provided:
>
> . . . .
>
> 3. Illegal resistance to any order or process made or issued by it.

### III. *The Timeliness of the Notice.*

The mother argues she was not served with notice of the contempt application until the morning of the hearing. She does not challenge the manner of service of notice or contest the court's jurisdiction over her. She complains only that she was not given adequate time to prepare for the hearing.

■ This issue was not raised in the district court, and it was therefore waived. In any event, her argument is without merit. She had actual and timely notice of the contempt application well in advance of the hearing through service of notice on her attorney. *See Beauchamp v. Iowa Dist. Court,* 328 N.W.2d 527, 528 (1983) (under Iowa Rule of Civil Procedure 56.1(n), court could prescribe notice on attorney if defendant shown to consistently evade process).

### IV. *The Contempt Finding.*

■ Finally, the mother argues the State did not satisfy its burden of proof in establishing that she failed to comply with the court order by proof beyond a reasonable doubt. We do not agree. The mother was ordered to sign admission papers to Orchard Place, but she refused. She was ordered to complete a Title XIX application, and she refused to do that. She was ordered to fully cooperate with the admissions procedure,

and she did virtually everything possible to obstruct it.

We conclude that the finding of contempt was supported by evidence beyond a reasonable doubt, and we therefore annul the writ of certiorari.

**WRIT ANNULLED.**