# IN THE COURT OF APPEALS OF IOWA

No. 14-0619
Filed August 17, 2016

**CACIE ELIZABETH LACROIX,**
**n/k/a CACIE ELIZABETH KRAMPER,**
    Plaintiff-Appellant,

**vs.**

**MICHAEL ANTHONY VERDOORN,**
**a/k/a MICHAEL ANTHONY BARNETT,**
    Defendant-Appellee.

_____

Appeal from and certiorari to the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

Cacie LaCroix appeals from an order in which the district court sanctioned her and her attorney, and from the subsequent dismissal of her application to modify a Nebraska custody decree. **AFFIRMED ON APPEAL; WRIT ANNULLED.**

R. Scott Rhinehart of Rhinehart Law, P.C., Sioux City, for appellant.

Michele M. Lewon of Kollars & Lewon, P.L.C., Sioux City, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Cacie LaCroix (now known as Cacie Kramper) appeals from an order sanctioning her and her attorney and from the subsequent dismissal of her application to modify a Nebraska custody decree. Finding no abuse of discretion or error, we affirm. Attorney fees in the sum of $2500 and the costs of this action are assessed against Cacie.

**I. Background Facts and Proceedings.**

Pursuant to a June 28, 2011 Nebraska decree, Michael Verdoorn (also known as Michael Barnett) and Cacie LaCroix had joint legal custody of their child, N.V., born in 2009, and Cacie was granted physical care. Michael was granted specified parenting time.

On October 31, 2012, Cacie filed a petition to modify the Nebraska decree in Iowa district court in which she asserted, "Both parties and the minor child[ ] have moved from Dakota County, Nebraska, and currently reside in Woodbury County, Iowa." An affidavit of service dated November 20, 2012, states Michael was personally served at an address in South Sioux City, Nebraska.

On November 28, 2012, Cacie filed an application for emergency hearing on temporary custody and physical care asserting the three-year-old child had been sexually abused by a five-year-old cousin and Michael was not adequately protecting him during visitation. A copy of this application was mailed to Michael in South Sioux City, Nebraska.

In a November 28, 2012 order setting hearing, the Iowa court noted "the absence of legislative authority" for a temporary modification order, except in emergency situations:

> Iowa Code section 598B.204 deals only with the issue of jurisdiction when there may be another state that has entered a custody determination . . . ; and even section 598[B].204 requires an emergency situation where the children are subjected to or threatened with mistreatment or abuse simply to exercise such jurisdiction.
>
> The court finds, based upon the allegations contained in the application and supporting affidavit, that said allegations if proven to be true may constitute emergency-type circumstances warranting a temporary modification of [father's] visitation rights.

A hearing on the application was set for December 10. A copy of the order setting hearing was mailed to Michael at "his last-known post office address" in Nebraska.

Michael did not attend the December 10 emergency hearing and a default order was entered, requiring that Michael's visitation with his child be supervised. A copy of the order of default was mailed to Michael in Nebraska.

On December 14, 2012, Michael filed an answer denying he resided in Iowa. He also moved to set aside the default temporary order, stating he had not received notice. The motion noted the clerk's office had received the returned court orders setting hearing and for default, which returns were docketed. Cacie resisted the motion to set aside.

Another hearing was set on the emergency matters for January 28, 2013.[1] After an unreported hearing, the court set aside the default order and rescheduled a hearing on temporary matters for March 11, 2013.

---

[1] This record provides no indication the Iowa court or Cacie ever contacted the Nebraska court of the pending modification application.

> Pursuant to Iowa Code section 598B.204(4) (2011),
>
> A court of this state which has been asked to make a child-custody determination under this section [temporary emergency jurisdiction], upon being informed that a . . . child-custody determination has been made by . . . a court of a state having jurisdiction . . . , *shall immediately communicate with the other court*. A court of this state which

On March 1, 2013, the attorney for Cacie, Scott Rhinehart, notified the court of a sixty-day suspension of his law license and that another attorney for the firm would be representing Cacie.

On March 11, a hearing took place during which Cacie testified about her allegations supporting her request for supervised visitation, Michael responded, and exhibits were admitted. On March 26, the Iowa court entered an order denying the motion to have Michael's visitation with N.V. be supervised but found Michael should not allow the child to have unsupervised contact with the alleged "offending cousins."

Rhinehart returned as Cacie's counsel on April 16, 2013.

Trial was initially scheduled for July 1, 2013, but discovery skirmishes occurred and this case was continued until January 29, 2014.

On July 29, 2013, Cacie filed a renewed application for emergency hearing on temporary custody and physical care. Michael resisted, contending:

> 1. This matter has been heard by the Court on two occasions already (December 10, 2012/January 25, 2013, and March 11, 2013), and is now before the Court a third time. It is a waste of judicial resources to have to compel the Court and Defendant to be present a third time for a request that has already been denied by Judge Sokolovske.
> 2. The Court may enter an emergency order in "rare circumstances." There are no facts that would require this Court to make an emergency modification to the visitation provisions that are currently in place.

---

is exercising jurisdiction pursuant to sections 598B.201 through 598B.203, upon being informed that a child-custody . . . determination has been made by . . . a court of another state under a statute similar to this section, *shall immediately communicate with the court of that state to resolve the emergency*, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

(Emphasis added.)

3. The parties have secured a trial date of January 29, 2014, to ultimately resolve the issues in this case. Plaintiff agreed to continue the trial date from July 11, 2013, to January 29, 2014. If it was so imperative that the case be resolved by way of emergency, it does not follow that Plaintiff would not have demanded the trial date occur on July 11, 2013, when the entire case could have been resolved.

4. Plaintiff should be required to reimburse Defendant for attorney fees for having to defend this request a third time. Defendant has already expended over $10,420.00 in this case, and has not yet had a trial. Those litigation expenses have all related to Plaintiff's frivolous requests for temporary and emergency relief, which she has no basis to request.

Despite the resistance, another hearing on Cacie's renewed application for emergency hearing on temporary custody and physical care was held on August 13.

On September 5, 2013, the court entered a ruling, which states in part:

Exhibits 101 through 104 were received in evidence as was a deposition of Daniel Wayne Gillette, M.D., which is marked as Exhibit A on the court's copy but does not appear to have an original label on it. It is the deposition transcript of Dr. Gillette that Ms. Kramper and her attorney base their renewed application for emergency hearing upon. The information in the transcript, however, is not new but is exactly the same information that was available to Judge Sokolovske when she denied relief to Ms. Kramper after a hearing on March 11, 2013, wherein a report from Dr. Gillette containing the same information was received in evidence. This same matter was also before the court in December and January of last year. It has previously been ruled upon and not appealed.

The court noted several child abuse investigations had been conducted by the department of human services since the filing of the modification action, none of which had been founded (though one was still pending). The court accepted the testimony of Dr. Angela Stokes that even if the children's alleged behavior had occurred, "it would be considered normal."

The court wrote:

[T]his matter was set for hearing by the court after reading the allegations in the renewed application for emergency hearing. The court finds that those allegations are nothing new and certainly do not constitute an emergency. The allegations that they are new, that the child is not being supervised, that the child is being sexually abused by a sexual perpetrator are all wholly unsupported by the record and they all have been previously litigated before the district court. The court finds the actions of counsel in this matter particularly disturbing. Counsel was aware that this information was not new. Under the current paperless system that the court is utiliz[ing] for its operation by designating the matter as an "emergency" and placing it in red letters in the filing queue, counsel was aware that it would be placed in front of other pending matters of equal or higher importance and chose to mislead the court by so doing.

The court denied the renewed application for temporary custody, appointed a guardian ad litem, and ordered Cacie to pay Michael $2000 in attorney fees for "defending the same action on a repeated basis." The court further sanctioned Rhinehart $2000 "as and for attorney fees for Michael Anthony Verdoorn for intentionally abusing the court's emergency process."

Cacie filed an interlocutory appeal, which was denied by our supreme court on October 9, 2013.

A pretrial stipulation was filed by the parties on January 27, 2014. Michael's address was listed there as being in Nebraska.

Trial on the petition to modify was to begin on March 27, 2014. However, on that date, the Iowa court observed that it was being asked to modify a Nebraska decree. The court noted,

it could have had jurisdiction in this matter had Nebraska been asked—if the decree from Nebraska had been registered in Iowa and if the Nebraska court had been asked to waive jurisdiction and had done so. None of those intermediate things happened here, so as a result of that, Nebraska has not waived exclusive continuing jurisdiction and they are the only state that has jurisdiction over this issue.

The court therefore dismissed the case for lack of jurisdiction.

Cacie appeals.

**II. Discussion.**

***A. Jurisdiction-Modification Action.*** Cacie's modification action of the Nebraska custody decree relies upon the jurisdiction of the Iowa district court pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 598B (2011). We review questions of subject matter jurisdiction de novo under UCCJEA. *In re B.C.*, 845 N.W.2d 77, 79 (Iowa Ct. App. 2014).

"Jurisdictional requirements are mandatory, not discretionary." *Id.* "If the court lacks subject matter jurisdiction, it is *without authority* to hear the case and must dismiss the petition." *Id.* (citation omitted).

The UCCJEA provides that "a court of this state *shall not modify a child-custody determination made by a court of another state*" unless certain conditions are met. Iowa Code § 598B.203 (emphasis added).

The Iowa court *may* be able to modify a decree of another state if Iowa is the "home state" of the child at the commencement of the suit, *see id.* § 598B.201(1)(a), *and* either (1) "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction under section 598B.202 or that the court of this state would be a more convenient forum" or (2) "[a] court of this state or a court of the other state determine that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." *Id.* § 598B.203.

Even assuming Iowa is the child's home state, neither of the section 598B.203 alternatives has been satisfied in this case: no determination of any kind has been made by the Nebraska court, and it is undisputed that Michael lives in Nebraska. In fact, all mailings of service have been to Michael in Nebraska—even the application in which Cacie asserted he resided in Iowa. Consequently, the district court was correct in concluding it did not have jurisdiction to modify the Nebraska decree and properly dismissed the action. *Cf. B.C.*, 845 N.W.2d at 80 (dismissing termination-of-parental-rights action where temporary emergency jurisdiction did not exist).

**B. Temporary Emergency Jurisdiction.** Eight days after having Michael served with the modification application in Nebraska, Cacie filed a motion for emergency hearing. An Iowa court "has temporary emergency jurisdiction if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." Iowa Code § 598B.204. It was upon this temporary emergency jurisdiction that the Iowa district court first entered the default order requiring supervised visitation between father and child. After further proceedings, however, the district court set aside the default order, held a second hearing on Cacie's request for an emergency ruling, and, on March 26, the court entered an order denying the motion to have Michael's visitation with N.V. be supervised but found Michael should not allow the child to have unsupervised contact with the alleged "offending cousins."

Pursuant to section 598B.204(3), because there had been a previous child-custody determination by the Nebraska court,

any order issued by a court of this state under this section [for temporary emergency jurisdiction] must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 598B.201 through 598B.203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

The March 26 order did not specify a period that the Iowa court considered adequate to allow Cacie to obtain an order from the Nebraska court. Cacie did not seek the Nebraska court's waiver of exclusive jurisdiction. She did, however, again file for an emergency hearing and ruling on custody matters.

Again, the court granted another emergency hearing. However, after the hearing the district court specifically found the allegations "are nothing new and certainly do not constitute an emergency." The court also found that the allegations that the child was not being supervised "are all wholly unsupported by the record." The court also found "the actions of counsel in this matter particularly disturbing" as counsel "was aware that this information was not new." The court ordered Cacie to pay $2000 to Michael for having to repeatedly defend the same issue and sanctioned Rhinehart for abusing the court's emergency jurisdiction.

**C. Sanctions.** "The proper means to review a district court's order imposing sanctions is by writ of certiorari." *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). We thus treat Cacie's appeal on this issue as a writ of certiorari. *See* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal . . . and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested.").

"We review a district court's decision on whether to impose sanctions for an abuse of discretion." *Barnhill*, 765 N.W.2d at 272.

> Certiorari is a procedure to test whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R. Civ. P. 1.1401. "Relief through certiorari is strictly limited to questions of jurisdiction or illegality of the challenged acts." *French v. Iowa Dist. Ct.*, 546 N.W.2d 911, 913 (Iowa 1996). Although our review is for an abuse of discretion, we will correct erroneous application of the law. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991). The district court's findings of fact, however, are binding on us if supported by substantial evidence. *Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992).

*Id.*

Cacie first argues, "There is no authority for a $4000 sanction under the Iowa Rules of Civil Procedure in an emergency hearing requesting emergency relief."[2]

Cacie invoked the district court's temporary emergency jurisdiction.[3] The district court's authority includes the authority to sanction a party or a party's legal counsel if a reasonable inquiry discloses a pleading is not well grounded in fact, not warranted by existing law or a good faith argument for an extension of law, or interposed for any improper purpose or delay. *See* Iowa Code § 619.19; Iowa R. Civ. P. 1.413(1); *Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989).

---

[2] Michael argues the issue is moot because the sanction has already been paid. We find it unnecessary to address this issue in light of our disposition on jurisdictional grounds.

[3] One court has concluded:

> Even in the absence of jurisdiction over the child custody or "underlying action, . . . the maintenance of orderly procedure, . . . justifies the conclusion that [a] sanction ordered [by the trial court] need not be upset." *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992). Whether an attorney or litigant has abused the system and what sanction should be imposed are collateral issues. Such actions are not judgments on the merits of the custody issue. *See id.* at 138.

*Pease v. Pease*, 809 So.2d 283, 285 (La. Ct. App. 2001).

Although, "district courts have no inherent authority to assess attorney fees as a sanction against a litigant or counsel," *Hearity v. Iowa Dist. Ct.*, 440 N.W.2d 860, 865 (Iowa 1989), rule 1.413 is a source of authority upon which the district court could rely in imposing attorney fees as a sanction. *See id.* (discussing rule formerly numbered 80(a)).

> One of the primary goals of the rule is to maintain a high degree of professionalism in the practice of law. The rule is intended to discourage parties and counsel from filing frivolous suits and otherwise deter misuse of pleadings, motions, or other papers. Sanctions are meant to avoid the general cost to the judicial system in terms of wasted time and money. "The 'improper purpose' clause seeks to eliminate tactics that divert attention from the relevant issues, waste time, and serve to trivialize the adjudicatory process." *Hearity*, 440 N.W.2d at 866 (quoting Mark S. Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 499 (1987)). However, a party or his attorney need not act in subjective bad faith or with malice to trigger a violation. A party or his attorney cannot use ignorance of the law or legal procedure as an excuse. The rule "'was designed to prevent abuse caused not only by bad faith but by negligence and, to some extent, professional incompetence.'"

*Barnhill*, 765 N.W.2d at 273 (some internal citations omitted).

Here, the district court held there was not an "emergency" as a matter of fact. The court's March 2014 ruling specifically found that counsel for Cacie knew that he was presenting no new evidence and used the "emergency" label abusively. Those findings are supported by substantial evidence and therefore are binding on us. *See id.* Cacie testified she had no new evidence to submit to the court in the August hearing. The counselor, Mandi Allen, also confirmed there was no new evidence to submit to the court. Under these circumstances, we find no abuse of discretion in the court's sanctions. We annul the writ.

***D. Appellate Attorney Fees.*** Michael seeks an award of appellate attorney fees. Attorney fees are permitted to be awarded when allowed by statute, and, when not expressly excluded, appellate attorney fees may be awarded as well. *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (noting attorney fees may be awarded pursuant to statute); *see also Krebs v. Town of Manson*, 129 N.W.2d 744, 746 (Iowa 1964) (noting the rules of civil procedure have the force and effect of statutes).

There were two issues before us in this appeal. One of the issues relates to Cacie's petition for modification. Appellate fees may be awarded to the prevailing party in a modification action pursuant to Iowa Code section 598.36. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Michael has resisted and prevailed in obtaining a dismissal of the modification action. He also has also been obliged "to defend the trial court's decision on appeal." *Id.* Accordingly, we award Michael $2500 towards his attorney fees to be paid by Cacie.

Cacie shall pay the costs of this action.

**AFFIRMED ON APPEAL; WRIT ANNULLED.**

Tabor, J., concurs; Vaitheswaran, J., concurs specially.

**VAITHESWARAN, Judge** (concurring specially).

I concur in the majority opinion, but write separately to suggest the district court's sanction of $4000 and our award of appellate attorney fees also find support in provisions of the UCCJEA. *See* Iowa Code ch. 598B.

Like the majority, I discern no error in the district court's dismissal of the petition for lack of subject matter jurisdiction. The dismissal order rendered Verdoorn the prevailing party. As Verdoorn points out, Iowa Code section 598B.312 authorizes a court to award a prevailing party "necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney fees, investigative fees, expenses for witnesses, travel expenses, and child care expenses during the course of the proceedings." In my view, this provision supports the district court award of $4000 and our court's award of $2500 in appellate attorney fees.

I recognize the district court did not reach the merits of the petition under the UCCJEA. However, our court has affirmed a section 598B.312 attorney fee award where the case was resolved on jurisdictional rather than substantive grounds. *See In re Marriage of Pereault*, No. 12-1178, 2013 WL 750439, at *4 (Iowa Ct. App. Feb. 27, 2013) (concluding "Washington, not Iowa, was the child's 'home state' . . . under the UCCJEA," "the Iowa court did not have jurisdiction to make an initial child-custody determination," and the respondent should have been awarded attorney fees under section 598B.312); *see also Maruna v. Peters*, No. 13-1362, 2014 WL 3748246, at *4 n.3 (Iowa Ct. App. July 30, 2014) (declining to award attorney fees under section 598B.312 because "[n]either the jurisdiction of the Iowa court nor the enforcement of a custody determination

made by a jurisdiction other than Iowa was at issue in this case, as it was in

*Pereault").  In my view, Pereault furnishes persuasive authority for the district*

*court's award of sanctions and attorney fees.*

Arguably, sanctions and attorney fees also were authorized by section

598B.208, which addresses jurisdiction gained by virtue of a person's

"unjustifiable conduct."[4]  *See* Iowa Code § 598B.204(1).  This provision states:

> 3. If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection 1, it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney fees, investigative fees, expenses for witnesses, travel expenses, and child care expenses during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate.  The court shall not assess fees, costs, or expenses against this state unless authorized by law other than this chapter.

*Id.* § 598B.208(3).  At first, the district court exercised jurisdiction but found the

actions of plaintiff's counsel "disturbing."  The case involved custody of a child.

The initial custody order was issued by a Nebraska court.  At the time of trial,

Verdoorn lived in Nebraska with the child.  The plaintiff did not obtain an

agreement to transfer the modification action to Iowa or obtain an order from the

---

[4] The provision states in pertinent part:
> 1. Except as otherwise provided in section 598B.204 or by any other law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless any of the following applies:
> a. The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction.
> b. A court of the state otherwise having jurisdiction under sections 598B.201 through 598B.203 determines that this state is a more appropriate forum under section 598B.207.
> c. No court of any other state would have jurisdiction under the criteria specified in sections 598B.201 through 598B.203.

Nebraska court approving a transfer. The plaintiff ignored these jurisdictional hurdles and precipitously filed not one but two "emergency" petitions in Iowa. In my view, the plaintiff's actions constituted "unjustifiable conduct" warranting the imposition of sanctions and an award of appellate attorney fees under section 598B.208(3).

For these additional reasons, I would affirm the district court and annul the writ of certiorari.