**UNITED STATES of America, Plaintiff,**

v.

**Kenneth Lance MALLORY, Defendant,**

**In Re: Lee A. Cohn, Contemnor.**

**Case No. 04–60315–CR.**

United States District Court, S.D. Florida.

Oct. 31, 2007.

Joanne Fine, United States Attorney's Office, Fort Lauderdale, FL, Plaintiff.

J. David Bogenschutz, Fort Lauderdale, FL, for Contemnor.

### ORDER

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court sua sponte. At a hearing on January 29, 2007, the Court announced its finding that criminal contempt, 18 U.S.C. § 401 (2006), is a Class A felony, and later put forth an

Order setting forth much of its reasoning. *See* DE 111. The Contemnor Lee A. Cohn objected to the Court's finding and filed Memoranda in support of his position. DE Nos. 90, 104, 120, & 124. At sentencing held on July 9, 2007, the Court found that Cohn's behavior warranted a three-level enhancement for substantial interference with the administration of justice pursuant to United States Sentencing Guidelines § 2J1.2(B)(2); Contemnor also objected to that finding. At sentencing, Cohn renewed his objection to the Court's classification of criminal contempt as a Class A felony. For the benefit of the Parties and any reviewing court, the Court enters this Order to set forth its reasoning as to both the three-level enhancement and the classification of criminal contempt as a Class A felony.

## I. *Background*

While the legal issues herein involve Contemnor Lee A. Cohn (hereinafter "Cohn"), the above-styled cause commenced on December 16, 2004, with the filing of a one-count Indictment (DE 1) charging Defendant Kenneth Lance Mallory (hereinafter "Mallory") with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On January 12, 2005, Cohn filed a Notice Of Permanent Appearance (DE 9) stating that he would be appearing as counsel for Mallory in these proceedings. Thereafter, he represented Mallory at his change of plea and sentencing hearings. Approximately five months after Judgement (DE 33) was entered against Mallory, Plaintiff United States of America (hereinafter the "Government") filed a Notice To Court Regarding Status Of Defendant's Counsel (DE 36). In said Notice, the Government informed the Court that at the time Cohn represented Mallory at the aforementioned hearings, he was not authorized to practice law in the State of Florida. *See* DE 36. The Court thereafter issued an Order To Show Cause (DE 81) pursuant to Federal Rule of Criminal Procedure 42(a) directing Cohn to appear and show cause as to why he should not be held in criminal contempt for the conduct set forth above.

Following the Court's Order To Show Cause, a number of hearings were held, including the aforementioned hearing on January 29, 2007, where the Court announced its finding that criminal contempt is a Class A felony. While Cohn never denied that he appeared before the Court without being licensed, he continuously contested the Court's finding that criminal contempt is a Class A felony. The Court granted Cohn leave to enter a plea of guilty and after sentencing remain free on bond pending his appeal. Prior to sentencing, Cohn notified the Court that he refunded to Defendant Lee Mallory's family the fee he received for his representation of Mallory. At sentencing, the Government moved for several enhancements under the sentencing guidelines. After hearing argument and considering the governing caselaw, the Court found that Cohn's behavior warranted a three-level enhancement under the United States Sentencing Guidelines § 2J1.2(B)(2). Cohn objected to the enhancement.

Thereafter, taking full account of Cohn's actions and the statutory factors outlined in 18 U.S.C. § 3553, the Court sentenced Cohn to forty-five days of incarceration, with a five-year term of supervised release, and ordered that he perform four hundred hours of community service. At the conclusion of the sentencing, the Court informed the Parties that it would fully set forth its reasoning in a written order as to the three-level enhancement and the Court's finding that criminal contempt is a Class A felony.

## II. *The Three–Level Enhancement*

The Court notes that both § 2J1.2(b)(2) and § 2J1.3(b)(2) of the United States Sentencing Guidelines allow for an en-

hancement of three levels based on "substantial interference with the administration of justice." Application Note 1 for both sections defines the phrase as follows: " 'Substantial interference with the administration of justice' includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2(b)(2), n. 1; § 2J1.3(b)(2), n. 1. In the instant action, the Court's finding centered on the phrase "unnecessary expenditure of substantial governmental or court resources." *Id.*

Caselaw interpreting the phrase as used in either section provides illumination into its meaning. *See United States v. Weissman*, 22 F.Supp.2d 187, 196 (S.D.N.Y. 1998), *aff'd* 195 F.3d 96 (2d Cir.1999) (interpreting the identical provisions). The Eleventh Circuit has not addressed the weight to be given Application Note 1; however, other circuits have found that "[s]ubstantial interference with justice requires proof of unnecessary expenditure of substantial government resources." *United States v. Tackett*, 193 F.3d 880, 885 (6th Cir.1999) (quotation omitted).

■ When imposing a three-level enhancement for causing substantial interference with the administration of justice for the "unnecessary expenditure of substantial governmental or court resources," § 2J1.2(b)(2), the Court must: (1) identify a particular expenditure of governmental resources, (2) which but for the defendant's conduct would not have been expended, and (3) that the expenditure was substantial in amount. *Tackett*, 193 F.3d at 887; *see also United States v. Sinclair*, 109 F.3d 1527, 1539–40 (10th Cir.1997) (discussing how substantial interference can be inferred). However, "[t]he government need not particularize a specific num-

ber of hours expended by government employees to sustain the application of section 2J1.3(b)(2)'s enhancement." *United States v. Johnson*, 485 F.3d 1264, 1271 n. 8 (11th Cir.2007).

The Application Notes for §§ 2J1.2(b)(2) and 2J1.3(b)(2) do not define the term "substantial." Therefore, the Court will ascribe to the term its "ordinary or natural meaning." *United States v. Zheng*, 306 F.3d 1080, 1085 (11th Cir.2002) (quoting *Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081 (11th Cir.1996) (per curiam)); *see also Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). *Black's Law Dictionary* defines substantial as "[o]f real importance; of considerable value; valuable. Something worthwhile as distinguished from something without value or merely nominal." *Black's Law Dictionary* 1428 (6th ed.1990). In *Webster's Third New International Dictionary* substantial is defined as "(c) of substance, real, not imaginary or illusive." *Webster's Third New International Dictionary* 2280 (Merriam Webster 1981).

Federal cases have not identified a particular method for determining whether the expenditure of government or court resources is "substantial." However, courts have found that the cost of interviewing and re-interviewing witnesses to ascertain the truth about a particular crime is substantial. *See, e.g., United States v. Sinclair*, 109 F.3d 1527, 1540 (10th Cir.1997); *United States v. Atkin*, 29 F.3d 267, 268 (7th Cir.1994); *see also United States v. Leung*, 360 F.3d 62, 67–68 (2d Cir.2004) (the cost of interviewing numerous witnesses where the defendant faked his own death to avoid prosecution was substantial). Courts have also looked

at the expenditure involved in the government's investigation of a defendant's interference with justice. *See, e.g., United States v. Tankersley,* 296 F.3d 620, 623 (7th Cir.2002); *United States v. Butt,* 955 F.2d 77, 88 (1st Cir.1992); *United States v. Lueddeke,* 908 F.2d 230, 234 (7th Cir.1990) (FBI spent two full weeks trying to sort out the truth deemed substantial). Courts have also looked to the expenditure of precious judicial resources to determine if substantial resources were expended. *See, e.g., United States v. Bradach,* 949 F.2d 1461, 1463 (7th Cir.1991) (false testimony impaired the grand jury proceedings and necessitated four perjury-related trials in three years deemed substantial).

■ In the instant action, the Government established that the costs incurred by it and the Court as a result of Cohn's crime were substantial. *See* Transcript of Sentencing Held on July 9, 2007, pp. 6–12. Among the areas addressed by the Government was the cost of transporting Defendant Lee Mallory for re-sentencing from Kentucky to Florida. *Id.* p. 7. Further, the United States Marshall's Service incurred various costs incidental to Mallory's transportation from Miami where he was housed, to Ft. Lauderdale where he was re-sentenced. The Government also incurred the additional cost of investigating Cohn's actions and their impact upon Mallory's sentence. *Id.* p. 8. This included Cohn's failure to pursue a possible Rule 35 departure for Mallory. Further, the Court was also forced to expend precious judicial resources by vacating Mallory's sentence, taking the time to entertain further pleadings in that matter, and finally re-sentencing him. Accordingly, the Court finds that Cohn's actions resulted in the unnecessary expenditure of substantial governmental and court resources, as opposed to a small or nominal sum as argued by Cohn at sentencing.

### III. *Criminal Contempt As a Class A Felony*

The issue of whether criminal contempt is a Class A felony is a question of statutory construction. When engaging in statutory construction, the Court is always mindful of the Eleventh Circuit's admonition: "When the words of a statute are unambiguous, then this first canon [of statutory construction] is also the last: judicial inquiry is complete." *CBS Inc. v. Prime-Time 24 Joint Venture,* 245 F.3d 1217, 1222 (11th Cir.2001)(citing *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186 (11th Cir.1997)). Thus, when determining the proper classification for criminal contempt the Court looks first to the statute, which the Court will follow unless it leads to a "truly absurd interpretation." *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.,* 374 F.3d 1011, 1013–14 (11th Cir.2004)(citing *CBS Inc.,* 245 F.3d at 1228). When confronted with a result that strikes the Court as unwise or imperfect, the Court still implements the plain meaning of the statute. "Otherwise, clearly expressed legislative decisions would be subject to the policy predilections of judges." *CBS Inc.,* 245 F.3d at 1228 (citing *Merritt,* 120 F.3d at 1188). Further, the overarching presumption in statutory construction is always that "Congress said what it meant and meant what it said." *Id.* at 1222 (citations omitted). In addition, all laws on a subject should be read together. *See Reynolds v. McArthur,* 27 U.S.(2 Pet.) 417, 429, 7 L.Ed. 470 (1829).

■ The text of 18 U.S.C. § 401 provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (2006). Absent from the text of § 401 is a maxi-

mum sentence for punishing a contemnor. *See Frank v. United States,* 395 U.S. 147, 149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969) (noting Congress "placed no statutory maximum that might limit a court's ability to mete out an appropriate punishment for contempt"). When a statute fails to designate a statutory maximum, it is presumed that the maximum sentence is life. *See United States v. Carpenter,* 91 F.3d 1282, 1284 (9th Cir.1996) (noting that "[l]ike criminal contempts, Class A felonies have no statutory maximum sentence, short of life imprisonment or death"). Therefore, under § 401 a court has the discretion to sentence a defendant to life imprisonment for criminal contempt. *See United States v. LaBonte,* 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) (holding that the "word maximum most naturally connotes the greatest quantity or value attainable in a given case") (quotation omitted).

■ The classification of criminal offenses in Title 18 of the United States Code is determined by reference to 18 U.S.C. § 3559. Section 3559 states, in relevant part, that "[a]n offense that is not specifically classified by a letter grade in the section defining it, is classified [by] the maximum term of imprisonment authorized." 18 U.S.C. § 3559 (2006). Section 3359 further provides that a statute with a maximum sentence of "life imprisonment, or if the maximum penalty is death, [is classified] as a Class A felony." *Id.* Section 3559 does not exempt any non-classified offense of the United States Code from its application. As noted above, the maximum term of imprisonment for criminal contempt is life. Therefore, according to the plain language of § 3559, an offense in violation of § 401 is properly classified as a Class A felony.

## IV. *Counter Arguments*

The plain reading of the statute, though syllogistically sound, is not immune from criticism. One opinion in the Ninth Circuit and a concurrence in this Circuit have criticized the plain meaning of the statute as absurd, and rejected it as such. *See United States v. Carpenter,* 91 F.3d 1282, 1284 (9th Cir.1996); *United States v. Love,* 449 F.3d 1154, 1158 (11th Cir.2006) (Barkett, J., concurring). The aforementioned opinions argue that the plain meaning of the statutes should be disregarded and replaced with the judicially-crafted framework in *United States v. Carpenter.* The opinions posit that under the plain meaning criminal contemnors would bear the same Class A felony classification as terrorists, murders, and the like. *See Carpenter,* 91 F.3d at 1284. The opinions argue that the absurdity of such a result is facially obvious. Additionally, the absurdity is evidenced by the fact that a court is vested with unbounded discretion at sentencing leaving the possibility for a sentence of life for an act that if committed before another judge may be punished by forty-five days imprisonment. The concurrence to *Love* also argues that these disparate sentences leave the contempt statute open to a potential, albeit hypothetical, Eight Amendment challenge for proportionality. *Love,* 449 F.3d at 1158 (Barkett, J., concurring). Both opinions offer the *Carpenter* approach as a panacea for the aforementioned ills that contemnors and courts are sure to suffer under the plain meaning of the statutes, while still embodying an approximation of the intent of Congress. *See id.*

### A. *The Carpenter Approach*

In *Carpenter,* the contemnor, Michael Carpenter, was part of an operation to import more than 50,000 pounds of hashish into this country. 1995 WL 17065073. He was subpoenaed to testify before a federal

grand jury and refused to testify. Consequently, he was held in civil contempt and incarcerated for eight months. *Carpenter*, 91 F.3d at 1283. He was then indicted for criminal contempt, pled guilty, and agreed to cooperate with the government. At the time of Carpenter's sentencing, his guideline range was six to twelve months incarceration. At sentencing, the district court granted the government's motion for a downward departure, and while taking due account of the eight months Carpenter already spent confined for civil contempt, it sentenced him to one day incarceration with a two-year term of supervised release. *Id.* at 1281. Carpenter appealed his sentence and argued that criminal contempt should be classified as a misdemeanor and, thus, supervised release would not be authorized. *Id.* On appeal, the government argued that by the terms of the statutes criminal contempt is a Class A felony and supervised release is authorized.

The Ninth Circuit panel rejected the government's argument that criminal contempt should be classified as a Class A felony. It acknowledged that "[l]ike criminal contempts, Class A felonies have no statutory maximum sentence, short of life imprisonment or death." *Id.* at 1284. However, it found that "[i]t would be unreasonable to conclude that by authorizing an open-ended range of punishments to enable courts to address even the most egregious contempts appropriately, Congress meant to brand all contempts as serious and all contemnors as felons." *Id.* It is at this point that the court departed from the statute's plain meaning, and judicially crafted its own *ad hoc* system of classification for contempt.

The *Carpenter* court constructed a scheme whereby a court looks to the United States Sentencing Guidelines to determine how criminal contempt should be classified. There is no specific guideline provision for criminal contempt, so under § 2X5.1, titled "All Other Offenses," a court is directed to apply the most analogous offense guideline. The most analogous guideline in *Carpenter* and the instant action is that for Obstruction Of Justice, which is found at § 2J1.2. Under the *Carpenter* approach, a court then uses the guideline range to classify the offense under 18 U.S.C. § 3559. Carpenter had a guideline range of six to twelve months; thus, his offense was classified as a Class A misdemeanor.

It is important to note the actual effect that the *Carpenter* approach has on criminal contempt. The *Love* concurrence posits that the *Carpenter* approach cures the problem of courts having unbounded discretion, so as to prevent a petty offense from being sentenced to "life imprisonment if the trial court, in its discretion, wished to impose that penalty." *Love*, 449 F.3d at 1158 (Barkett, J., concurring). In making this argument, the *Love* concurrence ascribes to the *Carpenter* approach a force it does not possess.

The *Carpenter* approach merely governs the classification of a contemnor's particular conviction. A criminal offense under Title 18 is classified in reference to § 3559. Section 3559(b) by its own terms explicitly states that "an offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, *except that the maximum term of imprisonment is the term authorized by the law describing the offense.*" 18 U.S.C. § 3559(b) (emphasis added). The offense classification as designated in § 3559 only affects the incidents that attach at sentencing. Nothing within the *Carpenter* approach limits the discretion of the Court to sentence a contemnor within the advisory guideline range as opposed to the statutory maximum. Thus, the *Carpenter* approach has no affect on the potential maxi-

mum life sentence that is present under § 401 and this is at the heart of the challenge to the plain meaning made by both *Carpenter* and *Love*. *See Carpenter*, 91 F.3d at 1284; *Love*, 449 F.3d at 1158 (Barkett, J., concurring) (noting "there is no reason why Title 18 must be read to permit [such] results"). In essence, the only effect of the *Carpenter* approach is to tie the hands of the sentencing judge, as to the incidents that may attach to a court's sentence. *See, e.g.*, U.S.S.G. § 5b1.1 (whether probation is authorized), § 5D1.2 (terms authorized for supervised release), § 5E1.3 (special assessment). As discussed below, such incidents are not the sort of things contemplated as cruel and unusual punishment under the Eighth Amendment.

### B. *Arguments Against the Plain Meaning*

In addressing the proper weight to give to the *Carpenter* opinion and its *ad hoc* classification system, the Court begins with *Carpenter's* rejection of criminal contempt being classified as a Class A felony. The *Carpenter* opinion rejected the classification of all criminal contempts as Class A felonies as "unreasonable," and from that point crafted the aforementioned system. The Court notes that the mere fact that a statute is unreasonable is not grounds to reject Congress's express intent in passing the law. *Shimek*, 374 F.3d at 1013–14 (noting the plain language of a statute will be followed unless it will lead to a " 'truly absurd' interpretation."); *see also CBS Inc.*, 245 F.3d 1217, 1222 (11th Cir.2001) (The result must not just be unwise, but "clearly absurd .... Otherwise, clearly expressed legislative decisions would be subject to the policy predilections of judges.").

The argument against the plain meaning made in the *Love* concurrence is more nuanced than the fact that the statute is unreasonable. Its argument centers on the fact that contemnors bear the same designation as terrorists and murders, and implicit within that designation is the discomfort that comes with courts having unbounded discretion in the sentencing of contemnors under § 401. *See Love*, 449 F.3d at 1158. As evidence of this discomfort, which the concurrence labels an absurdity, it cites to the fact that under the plain meaning of the statute the "mere forty-five days of imprisonment" that Love received as a sentence could have been as great as life. The concurrence then posits that this result, a potential life sentence for criminal contempt, is both absurd and potentially unconstitutional. Thus, it is bound to adopt the alternative construction offered by *Carpenter* that does not permit such a constitutionally suspect construction.

In addressing the *Love* concurrence's argument that unbounded discretion in the trial court is absurd, it is essential to understand the nature of criminal contempt and how the courts have historically addressed this deposit of discretion in the courts. The power of courts to the police proceedings before them without reliance upon the other branches is well established in the very nature of a court of law. *See Young v. United States*, 481 U.S. 787, 796, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (noting the purpose of criminal contempt power is to ensure that the judiciary has means to vindicate its own authority without complete dependence on other branches of government); *see also Ex Parte Robinson*, 86 U.S.(19 Wall.) 505, 510, 22 L.Ed. 205 (1873) ("The power to punish for contempt is inherent in all courts; .... The moment the courts of the United States were called into existence and invested with jurisdiction over any subject they became possessed of this power."). Thus, criminal contempt is unlike other crimes normally brought pursuant to the power of the state, and is thus a *sui generis* crime.

*See, e.g., Cheff v. Schnackenberg*, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). It is a *sui generis* crime by both its nature as an offense before the court and its ability to address a variety of offenses, "ranging from disrespect for the court to acts otherwise criminal." *Frank v. United States*, 395 U.S. 147, 149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). Although Congress is always free to limit the discretion of courts when dealing with criminal contempt, the history of contempt suggests that no such limit has ever been placed on the courts' power. *See generally* Ronald L. Goldfarb, *The Contempt Power*, 9–44 (Columbia University Press 1963); *see also Green v. United States*, 356 U.S. 165, 180 n. 11, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958) (noting "[u]nder English law, contempt sentences were not subject to any statutory limit."), *overruled in part on other grounds Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). The governance or check upon the courts' discretion is an internal governance, vested in the district court's conscience and the reviewing court's diligent review of the sentence imposed to ensure it is just and commensurate with the contemnor's actions. *See Green*, 356 U.S. at 188, 78 S.Ct. 632. This discretion deposited in the sentencing court's power also coincides with the discretion inherent in Class A felonies.

As noted above, the panel in *Carpenter* and the *Love* concurrence found it absurd to imagine that the discretion provided under § 401 meant that criminal contempt may be punished in the same manner as terrorists or murders. The response of courts for hundreds of years to the same unbounded discretion has not been to construct an artificial and illusory limit on courts' discretion, but to make sure that the exercise of the courts' discretion is done with the utmost sense of responsibility and circumscription. *See Green*, 356 U.S. at 188, 78 S.Ct. 632; *United States v.*

*Gracia*, 755 F.2d 984, 989 (2d Cir.1985) (noting that "[t]o guard against abuse in contempt sentences, both district and circuit courts must exercise special responsibilities"). When a reviewing court determines that a sentencing court has failed in this charge, the sentence is rightfully revised. *See, e.g., United States v. Gomez*, 553 F.2d 958 (5th Cir.1977) (fifteen-year sentence reduced to a two-year sentence); *United States v. Leyva*, 513 F.2d 774 (5th Cir.1975) (thirty-five year sentence reduced to two years); *United States v. Marshall*, 371 F.3d 42, 48–49 (2d Cir.2004) (reducing contemnor's sentence from twelve months to six because he did not receive a jury trial); *see also United States v. Roach*, 108 F.3d 1477, 1484–85 (C.A.D.C.1997) (noting appellate court's responsibility to review district court's sentence, but choosing instead to remand for district court to fashion appropriate sentence), *vacated on other grounds United States v. Roach*, 136 F.3d 794 (C.A.D.C. 1998). In *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958), the Supreme Court stated:

> We take this occasion to reiterate our view that in the areas where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The 'discretion' to punish vested in the District Courts by § 401 is not an unbridled discretion. Appellate courts have here a special responsibility for determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed. This Court has in past cases taken pains to emphasize its concern with the use to which the sentencing power has occasionally been put, both by remanding for reconsideration of contempt sentences in light of factors

it deemed important, and by itself modifying such sentences.

*Green,* 356 U.S. at 188, 78 S.Ct. 632 (citation omitted), *overruled in part on other grounds Bloom v. State of Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). The Supreme Court opinion in *Green* previously addressed the argument later raised by the *Love* concurrence and the *Carpenter* opinion, that there needs to be a check imposed upon the potentially harsh sentences in the area of contempt. The Supreme Court stated that "the answer to those who see in the contempt power a potential instrument of oppression lies in assurance of its careful use and supervision, *not in imposition of artificial limitations on the power." Id.* (emphasis added).

In addressing the argument made by the *Love* concurrence that the plain meaning is absurd because it permits an offense to be punished with forty-five days incarceration that could otherwise be punished with life imprisonment, the Court respectfully notes that such sentences actually stands for the opposite proposition. Sentences like those imposed in *Love, Carpenter,* and in the instant action are all examples of district courts fulfilling their duty under 18 U.S.C. § 3553 with the wisdom and restraint prescribed, in *Green.*

The Court notes that the plain meaning of § 401 provides a court with the broadest grant of discretion in the amount of time a contemnor may be sentenced, and a Class A felony classification provides the broadest amount of discretion to the sentencing court in the incidents that may attach to such a sentence. This use of the district court's discretion is illustrated in *Carpenter, Love,* and in the instant action. Carpenter was sentenced to a single day of incarceration, but he was previously incarcerated for eight months for civil contempt, and he rendered substantial assistance to the government. *Carpenter,* 91

F.3d at 1282–83. Rather than sentencing him to further incarceration time, the court may have felt that supervised release and its attendant restrictions addressed much of the remedial sanctions it felt were appropriate under § 3553. In *Love,* in addition to forty-five days of incarceration, he was also sentenced to five-years supervised release, which is an incident of sentencing that is only available for Class A felonies.

Further, courts have imposed sanctions for criminal contempt that range between the single day imposed in *Carpenter* to more serious sanctions that cannot be dismissed as petty. *See United States v. Lach,* 874 F.2d 1543, 1549 (11th Cir.1989) (no abuse of discretion in imposing forty-two month term of imprisonment on two counts of criminal contempt with sentences imposed to run consecutively to each other); *United States v. Monteleone,* 804 F.2d 1004, 1011–12 (7th Cir.1986) (upholding four-year term of imprisonment); *United States v. Cutler,* 58 F.3d 825, 838–40 (2d Cir.1995) (no abuse of discretion imposing on contemptuous counsel three years probation, ninety-day house arrest and one hundred and eighty-day suspension from practicing law). The range of sanctions imposed for criminal contempt demonstrates the precise reason why the classification of contempt as a Class A felony is appropriate. By providing courts with the full range of sanctions available for Class A felonies, Congress has vested courts with the power to properly vindicate their authority. *See Young,* 481 U.S. at 796, 107 S.Ct. 2124 (1987).

In the instant action, after carefully weighing the factors set forth in § 3553, including the statute's direction to look at the "kinds of sentences available," § 3553(a)(3), the Court found that a sentence with a term of incarceration of forty-five days was appropriate. The forty-five

day term of incarceration was appropriate precisely because the Court so heavily weighed the attendant incidents of the sentence, including the fact that Cohn would be a convicted felon, the five-year term of supervised release that was available for a Class A felony, and the four hundred hours of community he was ordered to perform. To circumscribe a court's discretion by limiting the incidents that may attach to sentencing a contemnor is, in effect, to force a court to punish through incarceration behavior that is more readily redressed through an extended term of supervised release and the designation of a felony conviction.

### C. Constitutional Challenge

The strongest argument against implementing the plain meaning of the statute and classifying contempt as a Class A felony is that it raises the issue of a potential Eighth Amendment challenge. *Love*, 449 F.3d at 1158 (Barkett, J., concurring). The concurrence in *Love* correctly noted that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Id., quoting Jones v. United States*, 529 U.S. 848, 857, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). The Court is mindful that it should always avoid a constitutionally questionable construction, because the presumption is that the laws as passed by Congress are constitutional. However, after careful reflection, the Court finds that the talisman of a constitutionally suspect construction is inapplicable to the plain meaning of §§ 401 and 3559.

The Court notes that a potential Eighth Amendment challenge as referenced in the *Love* concurrence does not lie in the classification of the offense, but in the penalty that is imposed. The Supreme Court has noted that "[t]he Eighth Amendment succinctly prohibits "exces-

sive" sanctions." *Atkins v. Virginia*, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The guiding principle courts use when determining whether a sanction is excessive is whether the punishment for the crime is graduated and proportioned to the offense. *See Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910); *see also Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding punishment must be proportional to the crime convicted); *but see Ewing v. California*, 538 U.S. 11, 11–12, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (holding that the "Eighth Amendment does not require strict proportionality between crime and sentence but forbids only extreme sentences that are grossly disproportionate to the crime.") (brackets and quotation omitted). As the *Carpenter* approach does not affect that length of incarceration that may be imposed upon a contemnor, but only the incidents to the incarceration, it is impossible to make an argument that *Carpenter* avoids an Eight Amendment challenge for an excessive sentence. Further, the Court is unaware of a single instance where a five-year term of supervised release and a special assessment of $100 has been found cruel and unusual for purposes of the Eighth Amendment. *Cf. Electro Serv., Inc. v. Exide Corp.*, 847 F.2d 1524, 1530–31 (11th Cir.1988) (noting that the appropriate test is whether the fine is "so large as to shock the judicial conscience").

It is worth noting that the concurrence to *Love* seizes on the principle in *Jones v. United States*, that when there are two viable constructions of a statute's language, the Court should choose the one that is not susceptible to a constitutional challenge. *Jones*, 529 U.S. at 857, 120 S.Ct. 1904. In *Jones*, the Supreme Court was interpreting the ambiguous term "dwelling," as used in the Federal Arson statute, 18 U.S.C. § 844(i). Under one construc-

tion of the term "dwelling" the statute would broaden the scope of federal power to encompass private owner-occupied residences. The other available construction would limit the statute to commercial buildings. *Id.* at 852–53, 120 S.Ct. 1904. The Supreme Court adopted the latter reading, to prevent a constitutional challenge for violating the Commerce Clause under the Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). *Jones,* 529 U.S. at 852–54, 120 S.Ct. 1904.

In contrast to *Jones,* the instant statutes, 18 U.S.C. §§ 401, 3559(a)(1), and their terms are neither ambiguous, nor are they susceptible to two potential interpretations. Thus, the principle in *Jones* of choosing between two viable constructions does not apply to the instant action.

■■■■ As in the present case, when the language of the statute is not open to another intellectually honest interpretation, the proper course of action is to adopt the plain meaning of the statute while highlighting the awkward or unwise result to Congress for it to amend the statute. *See, e.g., Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (holding the Federal Tort Claims Act did not permit exercise of pendant jurisdiction over additional parties as to which no basis for federal jurisdiction existed), *superseded by* 28 U.S.C. § 1367 (1990 Supp.) (codifying a rule of supplemental jurisdiction that permits the inclusion of pendent parties in a federal action); *Westfall v. Erwin,* 484 U.S. 292, 300, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) (finding that federal employees did not enjoy absolute immunity and stating "that Congress is in the best position to provide guidance for the complex ... inquiry as to whether absolute immunity is warranted."), *superseded by* 28 U.S.C. § 2671 *et seq.* (1989 Supp.), *recognized by Sowell v. Am. Cyanamid Co.,* 888 F.2d 802, 804 (11th Cir.1989). This

method of deference and respect for the separate spheres of government encourages change through the legislative process, and is diametrically opposed to the adoption of a super-statutory classification, as found in *Carpenter* and advocated for in the concurrence to *Love. See, e.g., Lawrence v. Texas,* 539 U.S. 558, 603–04, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (Scalia, J., dissenting) ("It is indeed true that later generations can see that laws once thought necessary and proper in fact serve only to oppress, when that happens later generations can repeal those laws. But it is the premise of our system that those judgments are to be made by the people, and not imposed by a governing caste that knows best.") (citation and quotations omitted). The Court notes that the latter method is both beyond the competency of this Nation's Article III courts and an affront to the democratic process. *The Federalist* No. 47 (James Madison) ("Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator.").

## V. The Functional Problem With Carpenter

If a reviewing court were to reject the arguments made above for the plain meaning and consider the *Carpenter* approach as a viable construction of §§ 401 and 3559, there is an additional argument to be made in favor of the plain meaning, namely the practical difficulties in implementing the *Carpenter* approach. As an initial matter, it is important to note that the *Carpenter* approach is unclear as to whether the Court looks to the base offense level of the most analogous offense alone or whether the Court uses the guideline computation of the particular contemnor and his applicable enhancements to determine the offense classification. Both approaches have merit under the language of

*Carpenter* and the *Love* concurrence. It is consistent with our present statutory scheme to look directly to the offense to determine the classification. *See* 18 U.S.C. § 3559 (2006). However, if a court sentenced a contemnor based on his final guideline range this would raise the very real possibility of a contemnor having the incidents of a Class A misdemeanor while receiving an actual sentence of incarceration that comports with a felony.

The second method of looking to the final guideline range for the particular contemnor also has merit, and comports with the method courts employ to determine whether a contemnor enjoys the right to a jury trial. *See, e.g., Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) (classifying contempt to determine whether the contemnor enjoyed the right to a jury trial). In such cases, the Supreme Court has noted that "the severity of the penalty actually imposed is the best indication of the seriousness of a particular offense." *Frank v. United States,* 395 U.S. 147, 149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). The Court notes that the actual sentence imposed and the final guideline range are not the same; however, in this unusual context, the final guideline range is a closer benchmark to the sentence imposed than the offense guideline without the applicable adjustments. *Cf. Rita v. United States,* 551 U.S. ——, 127 S.Ct. 2456, 2462, 168 L.Ed.2d 203 (2007) (holding "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

If the Court adopts the latter approach of using the final guideline range, there are very real practical difficulties that would raise serious constitutional issues inherent in carrying out the *Carpenter* approach. At the time a contemnor enters a plea of guilty, the court must apprise him of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed.R.Crim.P. 11(b)(1)(H). Under *Carpenter,* a court must look to the Guidelines to determine the maximum possible sentence, and thereafter inform the contemnor of said sentence when he enters his plea. Two problems exist under this formula. First, as shown above, the maximum sentence is still life, but the incidents that attach to the sentence are dependent on the final guideline and it being applied to the classifications listed in § 3559. Second, before the court can determine a contemnor's guideline range and inform him of the appropriate incidents a pre-sentence investigation must take place. *See* Fed. R.Crim.P. 32. It is in the Pre–Sentence Report that the Probation Department is called upon to:

> (A) identify all applicable guidelines and policy statements of the Sentencing Commission;
>
> (B) calculate the defendant's offense level and criminal history category;
>
> (C) state the resulting sentence range and kinds of sentences available;
>
> (D) identify any factor relevant to
>
>> (i) the appropriate kind of sentence, or
>>
>> (ii) the appropriate sentence within the applicable sentencing range.

Fed.R.Crim.P. 32(d)(1)(A)-(D). If the Court is called upon to follow both *Carpenter* and the Federal Rules of Criminal Procedure, it then must work backwards. It must order a Pre–Sentence Investigation of a contemnor when he exhibits a non-binding intent to plead guilty. At that time, the contemnor is in a difficult position, he must meet with probation and make statements that are necessary to ascertain his guideline range, but which could also be used to incriminate him at trial, if for some reason he later decides not to plea because the incidents that attach are greater than he anticipated, or if

the Court rejects his plea. Thus, the *Carpenter* approach fails as both an academic exercise and as a practical guide for district courts to follow when classifying criminal contempt.

### VI. *Conclusion*

Based on the foregoing analysis, the Court finds that Cohn's behavior warranted a three-level enhancement under § 2J1.2(B)(3). Further, the appropriate classification for criminal contempt is a Class A felony.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Contemnor Lee A. Cohn's objection to the Court's finding that criminal contempt, 18 U.S.C. § 401, is a Class A felony and his objection to the Court's finding that his actions constituted a substantial interference with the administration of justice, all of which were made at sentencing held on July 9, 2007 be and the same are hereby **OVERRULED** for the reasons expressed in this Order.